817 A.2d 982 (2003)
358 N.J. Super. 317
STATE of New Jersey, Plaintiff/Respondent,
v.
Thomas U. FIGUEROA, Defendant/Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 28, 2003.
Decided March 17, 2003.
*983 Yvonne Smith Segars, Public Defender, attorney for appellant (John Hanratty, Designated Counsel, on the brief).
Peter C. Harvey, Acting Attorney General of New Jersey, attorney for respondent (Russell J. Curley, Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, WALLACE, JR., and HOENS.
The opinion of the court was delivered by WALLACE, JR., J.A.D.
A jury found defendant Thomas U. Figueroa guilty of second degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1, and first degree armed robbery, N.J.S.A. 2C:15-1. After denying defendant's motion for a new trial and the State's motion to impose an extended sentence, the trial court found the Graves Act, N.J.S.A. 2C:43-6(a), applied. The court merged the two offenses and imposed a sentence of twenty years with a ten year period of parole ineligibility on the robbery offense. On appeal, defendant contends the trial court erred (1) in sentencing him pursuant to the Graves Act, which defendant claims is unconstitutional on its face or as applied to him; and (2) in admitting the redacted November 20, 1997 statement because its admission is contrary to the holding in State v. Covell, 157 N.J. 554, 725 A.2d 675 (1999), and the prejudicial effect outweighed its probative value. We affirm.
In the morning of September 24, 1997, codefendant James Anthony approached defendant about driving the get-away vehicle for a jewelry store robbery he and codefendant Timothy Sturdivant planned. Defendant agreed. At approximately 9:45 a.m., defendant and Anthony met Sturdivant, who had rented a burgundy minivan for the robbery. They drove to the Jewel Box jewelry store at 204 Jefferson Street in Passaic. Anthony and Sturdivant took a gym bag from behind the seat, retrieved.25 caliber handguns and black masks, and exited the van. Defendant moved to the driver's seat as Anthony and Sturdivant walked toward the store. Anthony and Sturdivant entered the store where Alan Kalupa and Ana Pina were preparing for customers and instructed them to get on the floor. Pina immediately got down on the floor and covered her face, while Kalupa pressed a silent alarm to the police *984 before getting down on the floor. One of the gunmen put his foot on Kalupa's back and placed his gun to Kalupa's head.
The gunmen emptied the cash register, removed money from Kalupa's pockets, and took jewelry from the display cases which they placed in a bag. Before leaving the store, one of the gunmen threatened to kill Kalupa if he got up. As soon as the gunmen left, Kalupa called the police. He estimated the gunmen took approximately $60,000 worth of jewelry. Neither he nor Pina was able to identify the gunmen.
Detective Stewart Kennedy of the Passaic Police Department investigated the robbery. The investigation led the police to defendant, Sturdivant, and Anthony. On November 12, 1997, the police arrested Sturdivant at the Econo Lodge as he was about to enter the automobile of his girlfriend, Beatriz Maldonado. A search of the car revealed a .25 caliber semi-automatic handgun.
The next day, the police arrested defendant at his home. After receiving his Miranda[1] rights, defendant agreed to give a statement. He confessed to being the driver in the September 24, 1997 robbery, outlined his participation, and implicated Anthony and Sturdivant as the two gunmen who entered the store. As a result of defendant's cooperation, Detective Kennedy recommended that defendant's bail be set at $50,000.
On November 20, 1997, defendant was transported to Passaic Police headquarters to appear at Municipal Court on outstanding warrants. While there, he asked to speak to Detective Kennedy. The detective again informed defendant of his rights, and defendant gave a second statement. He stated that Anthony told him that he and three other guys robbed the Wesola Tavern in Passaic at gunpoint where he shot the barmaid. Anthony did not tell him what kind of gun was used, but defendant had previously seen Anthony with a.25 caliber automatic. Further, defendant stated that Anthony, Sturdivant, and a young guy with dreadlocks had robbed another bar. Defendant denied any involvement in these two robberies.
Joseph Sullivan, an accountant for American Distribution Resources, defendant's employer in September 1997, testified that payroll records showed that defendant did not work on September 24, 1997.
Tammy Neal, an employee at National Car Rental in Newark, testified that she rented a burgundy minivan to Maldonado on September 19, 1997, and she returned it the evening of September 24, 1997.
Maldonado testified that Sturdivant was her boyfriend in 1997, and she knew defendant and Anthony. She acknowledged she rented a burgundy minivan on September 19 and returned it on September 24.
Defendant called several character witnesses in his defense to testify concerning his excellent reputation in the community for honesty and truthfulness. Two coworkers testified that defendant may have been working on September 24, 1997.
Defendant testified on his own behalf. He disavowed his November 13, 1997 statement, claiming that Kennedy threatened that unless he gave a statement, he would not be released. Defendant said his statement was not true, and he signed it in order to be released from custody. Defendant also asserted that the second statement he gave to police on November 20, 1997 was coerced. He said that Kennedy told him that if he did not sign another statement detailing other robberies by Anthony *985 and Sturdivant, his bail would be increased to $500,000. Defendant claimed he was at work at the time of the Jewel Box robbery.

I
Defendant contends the trial court erred in imposing a Graves Act sentence because it violated the Court's holding in State v. Johnson, 166 N.J. 523, 766 A.2d 1126 (2001). Specifically, he argues that a jury, not a judge, must make the finding of possession of a firearm beyond a reasonable doubt before a Graves Act sentence may be imposed.
In Johnson, the Court reviewed the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, which requires imposition of an enhanced mandatory minimum of eighty-five percent of the overall sentence and a three- to five-year period of post-release parole supervision when the defendant is convicted of a first or second degree "violent crime."[2] To avoid constitutional concerns that would arise from an interpretation of NERA under which the trial court could find the predicate facts that mandate an enhanced sentence by a preponderance of the evidence, the Court construed NERA to require a jury to make such findings applying the "beyond a reasonable doubt" standard. Id. at 543, 766 A.2d 1126. The Court explained, "a NERA sentence does not impose an increased maximum prison sentence beyond that otherwise available under the Criminal Code. However, `we have always recognized that real time is the realistic and practical measure of the punishment imposed.'" Id. at 541, 766 A.2d 1126 (quoting State v. Mosley, 335 N.J.Super. 144, 157, 761 A.2d 130 (App.Div.), certif. denied, 167 N.J. 633, 772 A.2d 934 (2001)). The Court stated that, as the United States Supreme Court recognized in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), there were fundamental constitutional concerns with the notion that a prosecutor could use a judicial hearing under subsection (e) of NERA to shift to the trial court the burden of finding predicate facts chargeable as elements of crimes in our criminal statutes. Johnson, supra, 166 N.J. at 543, 766 A.2d 1126. The Court stated:
Because of the uncertainty expressed by the U.S. Supreme Court respecting the continuing vitality of McMillan [v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)], and the broad understanding of "punishment" recognized by this Court, we will construe subsection (e) of NERA to require that the "violent crime" condition must be submitted to a jury and found beyond a reasonable doubt. To do otherwise would be to subject NERA to constitutional challenge.
[Id. at 543-44, 766 A.2d 1126 (footnote omitted).]
In McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the United States Supreme Court had upheld the constitutionality of a Pennsylvania statute providing for the imposition of a mandatory minimum term if the trial court determined by a preponderance of the evidence that the defendant "visibly possessed a firearm" in the course of committing an enumerated offense. McMillan, 477 U.S. at 81, 106 S.Ct. at 2413, 91 L.Ed.2d at 73. The Court concluded that the statute did not increase the maximum penalty for the crime, nor did it create a separate offense with a separate penalty, *986 but rather operated "solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." Id. at 87-88, 106 S.Ct. at 2417, 91 L.Ed.2d at 77.
In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455. The Court, however, expressly did not overrule its holding in McMillan that the imposition of a parole ineligibility term by a judge within the ordinary non-enhanced sentencing range for the crime was not unconstitutional, but it limited McMillan "to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdicta limitation identified in the McMillan opinion itself." Id. at 487, n. 13, 120 S.Ct. at 2361, n. 13, 147 L.Ed.2d at 453, n. 13. The Court "reserve[d] for another day the question whether stare decisis considerations preclude reconsideration of its narrower holding." Ibid.
Recently, in Harris v. United States, 536 U.S. 545, ___, 122 S.Ct. 2406, 2414, 153 L.Ed.2d 524, 537-38 (2002), the Court continued to adhere to McMillan, stating:
As we shall explain, McMillan and Apprendi are consistent because there is a fundamental distinction between the factual findings that were at issue in those two cases. Apprendi said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crimeand thus the domain of the juryby those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding. As McMillan recognized, a statute may reserve this type of factual finding for the judge without violating the Constitution.
In addition, the Court explained that:
When a judge sentences the defendant to a mandatory minimum, no less than when the judge chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juriesand without contradicting Apprendi.

[Id. at ___, 122 S.Ct. at 1418, 153 L.Ed.2d at 543.]
Prior to the decision in Harris, we recognized in State v. Watson, 346 N.J.Super. 521, 532, 788 A.2d 812 (App.Div.2002), that the rule in McMillan, "upholding the imposition by a judge of a parole ineligibility term, within the ordinary non-enhanced sentencing range for the crime, remains the law of the land." Further, we emphasized that Johnson involved a mandatory parole ineligibility term of eighty five percent of the sentence imposed and did not mention or overrule the Graves Act, which requires the trial court to determine whether defendant used or possessed a firearm during the commission of the offense and, if so, to impose a mandatory parole ineligibility term of between one third to one half of the base sentence. Id. at 533, 766 A.2d 1126 (citing State v. White, 98 N.J. 122, 484 A.2d 691 (1984); State v. Stewart, 96 N.J. 596, 477 A.2d 300 *987 (1984)). Further, we noted that, in Apprendi, our Supreme Court stated that its Graves Act decisions "pose no threat to constitutional liberties." Id. at 533-34, 120 S.Ct. 2348 (quoting Apprendi, supra, 159 N.J. at 25, 731 A.2d 485.)
Defendant also argues that he should not have received a Graves Act sentence because the jury acquitted him of the weapons offense. We disagree.
Defendant was convicted as an accomplice to first degree robbery. Our Supreme Court held in State v. Mancine, 124 N.J. 232, 260, 590 A.2d 1107 (1991), that "[b]ecause [defendant] is clearly an accomplice of the actual shooter under N.J.S.A. 2C:2-6c(1)(a), the Graves Act applies to him." See also, White, supra, 98 N.J. at 126, 484 A.2d 691 (Graves Act applies to unarmed accomplice because the accomplice has committed the same crime as the individual who possessed or used the gun and knew or had reason to know that his cohort would use or possess a firearm in the course of committing the crime).
In the present case, both victims of the robbery testified that each robber held a handgun during the robbery. Further, defendant confessed to the police that he saw both Sturdivant and Anthony with guns immediately before and after the robbery and described his role as the get-away driver. Based on this evidence, the jury found defendant guilty of first degree robbery, which is consistent with the trial court's conclusion that the Graves Act applied.
Consequently, we reject defendant's contention that it was unconstitutional to impose a Graves Act sentence.

II
Defendant argues the trial court erred in admitting his second statement because the admission is contrary to the holding in State v. Covell, supra, 157 N.J. at 554, 725 A.2d 675.
Prior to trial, defendant moved to suppress his statements. At the hearing, the prosecutor sought to admit the November 20, 1997 statement to establish that, prior to the Jewel Box robbery, defendant was aware that Anthony and Sturdivant possessed guns and used them in the past. The prosecutor also wanted to show that defendant voluntarily gave his statement because he did not want to be implicated in the other robberies. In his November 20, 1997 statement, defendant described two other robberies Anthony described to him and, in one of them, Anthony said he shot a barmaid. Defendant denied he was involved in the other robberies. The trial court found the statement was "highly relevant" to the issue of whether defendant knew a robbery was going to take place and whether handguns would be involved. The trial court did not consider this was evidence of other crimes or bad acts because the bad acts were by other people and not defendant. Even so, the court cited Covell and performed a N.J.R.E. 404(b) analysis before determining that the statement was admissible, and it redacted the statement to omit all references to the shooting of the barmaid.
At trial, after the statement was read into evidence, the trial court asked if defense counsel wanted a limiting instruction concerning this evidence. Defense counsel requested a cautionary instruction limited only to mentioning that defendant was not charged with other crimes. The trial court agreed and instructed the jury consistent with defense counsel's request.
We find no abuse of discretion in the trial court's treatment of the November 20 statement. Defendant did not implicate himself, so it was not other crimes evidence as to him.
*988 Beyond that, there is still the question whether the evidence should have been excluded under N.J.R.E. 403 because its probative value is substantially outweighed by the risk of undue prejudice.
In Covell, the Court noted that the trial court has broad discretion to determine the admissibility of evidence and only where there is a "clear error of judgment should a N.J.R.E. 403 determination be overturned." Covell, supra, 157 N.J. at 568-69, 725 A.2d 675. Further, the Court indicated that the less probative the evidence, the more likely the court will exclude it under N.J.R.E. 403. Id. at 569, 725 A.2d 675.
In the present case, the trial court found the evidence was highly probative to establish that defendant knew when he agreed to participate in the Jewel Box robbery that Anthony and Sturdivant would be armed. This evidence was relevant to show defendant's state of mind in agreeing to participate in an armed robbery, and the statement was not too remote. Nor do we find that its probative value was substantially outweighed by the risk of undue prejudice. In short, we find no abuse of discretion in the trial court's admission of the redacted November 20, 1997 statement.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Effective June 29, 2001, the Legislature amended NERA to apply to convictions of fifteen enumerated crimes. L. 2001, c. 129.