878 A.2d 757

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ALLAN FRANKLIN, DEFENDANT–APPELLANT.

Argued March 14, 2005—Decided August 2, 2005.

518

520

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney).

Simon Louis Rosenbach, Assistant Prosecutor, argued the cause for respondent (Bruce J. Kaplan, Middlesex County Prosecutor, attorney).

Steven G. Sanders argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Arseneault, Fassett & Mariano, attorneys).

Karen L. Fiorelli, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Peter C. Harvey, Attorney General, attorney).

Justice ALBIN delivered the opinion of the Court.

A jury convicted defendant Allan Franklin of second-degree passion/provocation manslaughter and acquitted him of various gun-related offenses. Based on the trial evidence, the sentencing judge determined that defendant committed the crime with a handgun, a fact *not* specifically found by the jury. Because that finding made defendant a second-time offender under the Graves Act, N.J.S.A. 2C:43-6(c), (d), the judge sentenced him to an extended term of twenty years. As a result of the judge's finding that defendant committed the crime while armed with a gun,

defendant received a sentence twice as long as the maximum ten-year sentence authorized for a second-degree crime. The Appellate Division affirmed the sentence.

Defendant claims that the imposition of a sentence beyond the statutory maximum based on judicial factfinding violated his Sixth Amendment right to trial by jury and Fourteenth Amendment right to due process. In particular, he claims that the sentence was in derogation of *Apprendi v. New Jersey*, which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 *U.S.* 466, 490, 120 *S.Ct.* 2348, 2362–63, 147 *L.Ed.*2d 435, 455 (2000).

We agree and now reverse.

### I.

### A.

At a jury trial, the evidence revealed that on May 26, 1997, defendant killed Isiac Warmack, the paramour of his estranged wife, Anne Franklin. Warmack's death was the culmination of a violent love triangle. The events that foreshadowed the killing date back to April 1993, when defendant threatened and pointed a gun at Warmack and Anne who were seated in a van. Later that month, defendant slipped into his wife's apartment through a window and entered her bedroom, put a knife to her throat, and threatened to kill her. Those incidents led to criminal charges and a guilty plea, resulting in defendant's imprisonment. After his release from prison in 1995, defendant maintained a tumultuous relationship with Anne. From September 1996 until February 1997, they lived together with their children, Allana and Allan, Jr., in Carteret, until Anne ordered defendant to leave. Anne then continued an intimate relationship with Warmack, who occasionally slept over at the Carteret house.

On the night of May 25, 1997, defendant called the house and spoke with eleven-year-old Allana, inquiring whether Warmack was there. Allana told him that Warmack was not in the house. Unpersuaded, defendant told his daughter that he was "going to get" Warmack. Allana did not relay the threat to her mother or Warmack, who was staying over that evening.

Anne and Warmack were sleeping together in an upstairs bedroom when, around midnight, defendant, armed with a loaded .25 caliber semiautomatic pistol, entered the house through the back door using a key. Once inside, defendant picked up an inoperable .32 caliber revolver and a mason hammer. He then proceeded upstairs into his wife's bedroom, turned on the light, and found Warmack in bed with Anne.

Defendant shot Warmack twice. Warmack fell onto the floor, moaning that he had been shot and for Anne to call the police. Defendant then shot Warmack a third time. Allana entered the bedroom before the third shot was fired and Allan, Jr. immediately afterwards. They screamed for their father, who was still brandishing a gun, to stop. Ignoring their pleas, defendant dragged Anne by the hair to the side of the bed and told her, "I'm going to show you what I'm going to do to your boyfriend." While Warmack was groaning in pain, defendant pulled the mason hammer from his belt and struck Warmack twice in the head. Warmack made no further sounds or movements.

Defendant then tied up both his wife and children and threatened to kill Anne. A short time later, he untied them and ordered them downstairs, where he read aloud from the Bible a passage condemning adultery. He repeatedly pointed a gun at Anne and the children and continued to threaten them. He also unsuccessfully attempted to enlist them in covering up the crime by bleaching the bloodstained carpet and dismembering Warmack's body.

At about 7:30 a.m., Anne quickly managed to dial 9-1-1 and hang up. Less than five minutes later, a police officer arrived and rang the doorbell. Anne, with her daughter directly behind her,

ran out the front door and told the officer that her husband had a gun and had killed a man. As other police officers were arriving at the scene, defendant released Allan, Jr. Within twenty minutes, defendant surrendered to the police and was placed under arrest. When asked by a police officer if anyone remained in the house, defendant responded, "I beat him with a hammer.... I shot him. He's dead."

Defendant's fingerprints positively matched prints on the .25 caliber handgun, which was recovered from the kitchen table inside the house. An autopsy of Warmack's body revealed that he had been shot three times. One bullet shattered his liver, pierced his lung, and damaged his heart, causing "sufficient blood loss" to put the victim into "irreversible shock" leading to death. Another bullet fractured Warmack's spine, and a third bullet passed through his arm. The autopsy also revealed hemorrhaging within the brain and two distinct areas where the skull had been fractured by the hammer blows. The medical examiner determined that Warmack was still alive when the head wounds were inflicted. He concluded that Warmack "died as a result of several types of trauma, multiple trauma, including gunshot wounds, the blunt [head] trauma and the incised wounds of parts of the body."

Defendant testified that on the evening of May 25 he went over to his wife's house to check on his son, who he had heard was ill. Before going, however, he visited a friend who turned over to him a loaded .25 caliber handgun. Defendant stated that it was his intention to give the gun to his sister for protection against a drug dealer. After entering Anne's house, he opened a closet and saw Warmack's coat. He then raced up the stairs, entered his wife's bedroom, and "just lost it" when he saw Warmack in bed with Anne.

Although he was "not really sure" what he did after that, defendant next remembered his daughter grabbing his arm and telling him, "Daddy, please stop that." He recalled that blood was gushing from Warmack's head, his wife and children were screaming, and the .25 caliber gun was in his hand. In response to

questioning at trial, defendant did not deny that he shot Warmack and beat him with a hammer; he just said that he had no memory of what happened.

Defendant was indicted by a Middlesex County Grand Jury for first-degree murder, *N.J.S.A.* 2C:11–3(a)(1), (2) (count one); first-degree kidnapping, *N.J.S.A.* 2C:13–1(b) (counts two, three, and four); third-degree aggravated assault with a deadly weapon, *N.J.S.A.* 2C:12–1(b)(2) (count five); fourth-degree aggravated assault by pointing a firearm, *N.J.S.A.* 2C:12–1(b)(4) (counts six, seven, and eight); third-degree terroristic threats, *N.J.S.A.* 2C:12–3(b) (counts nine, ten, and eleven); second-degree burglary, *N.J.S.A.* 2C:18–2 (count twelve); second-degree possession of a firearm for an unlawful purpose, *N.J.S.A.* 2C:39–4(a) (counts thirteen and fourteen); and second-degree possession of a hammer for an unlawful purpose, *N.J.S.A.* 2C:39–4(d) [1] (count fifteen).

The jury acquitted defendant of murder, but convicted him of the lesser-included offense of second-degree passion/provocation manslaughter, *N.J.S.A.* 2C:11–4(b)(2), (c). The jury acquitted defendant of all the other indictable charges, but on count nine convicted him of the lesser-included offense of harassment, a petty disorderly persons offense, *N.J.S.A.* 2C:33–4(b).

At sentencing, despite defendant's acquittal on all gun-related offenses, the trial court found that defendant committed the manslaughter while armed with a gun, thus making it a Graves Act offense, *N.J.S.A.* 2C:43–6(c). The court also found that this was defendant's second conviction under the Graves Act, requiring the imposition of an extended term pursuant to *N.J.S.A.* 2C:43–6(c).[2] Although the sentencing range for second-degree manslaughter is five to ten years, *N.J.S.A.* 2C:43–6(a)(2), defendant's

---

[1] We note that possession of a hammer for an unlawful purpose actually is a third-degree crime under *N.J.S.A.* 2C:39–4(d).

[2] As mentioned earlier, in 1993, defendant pled guilty to his first Graves Act offense, aggravated assault for knowingly pointing a loaded gun at his wife and Warmack.

second Graves Act conviction subjected him to a sentence within the range for a first-degree crime, ten to twenty years, *N.J.S.A.* 2C:43–7(a)(3), (c). Defense counsel acknowledged that his client's crime involved the use of a gun and that defendant was subject to an extended term.

In sentencing defendant, the trial court stated that he "thought" that defendant "should have been found guilty" of "a couple of charges" of which he was acquitted by the jury. The court further remarked:

> I have no idea why he was found not guilty. I have to accept the [jury verdict] like everybody else does, but it's hard for me to decipher how they could have found this defendant not guilty of the Unlawful Possession of a Weapon.
>
> He shot the guy. He had to have a gun. It is beyond my own ability to find out how he was found not guilty of Unlawful, or Possession of a Weapon for Unlawful Purpose. He had a gun and he used it. He never denied it. He took the stand. He said, I shot him. . . .
>
> [B]ut that's our jury system. And the great thing about this country is that we accept the decision of the jury. . . .

The trial court identified four aggravating factors: "[t]he risk that the defendant will commit another offense," *N.J.S.A.* 2C:44–1(a)(3); "[t]he extent of the defendant's prior criminal record," *N.J.S.A.* 2C:44–1(a)(6); "[t]he need for deterring the defendant and others from violating the law," *N.J.S.A.* 2C:44–1(a)(9); and "defendant committed the offense against a person who he knew or should have known was 60 years of age or older," *N.J.S.A.* 2C:44–1(a)(12). The court also identified two mitigating factors: "defendant acted under a strong provocation," *N.J.S.A.* 2C:44–1(b)(3); and "defendant's conduct was the result of circumstances unlikely to recur," *N.J.S.A.* 2C:44–1(b)(8). Concluding that the aggravating factors substantially outweighed the mitigating factors, the court sentenced defendant to an extended term of twenty years with a ten-year parole disqualifier for the manslaughter conviction and to a concurrent six-month term for harassment.[3]

---

3 Pursuant to *N.J.S.A.* 2C:43–8, the maximum sentence that can be imposed for the petty disorderly persons offense of harassment, *N.J.S.A.* 2C:33–4, is a thirty-

While defendant's appeal was pending before the Appellate Division, the United States Supreme Court rendered its decision in *Apprendi, supra,* 530 *U.S.* at 466, 120 *S.Ct.* at 2348, 147 *L.Ed.*2d at 435. Based on *Apprendi, supra,* defendant submitted on appeal that his sentence was not authorized by the jury's verdict and therefore was unconstitutional. In particular, he argued that the trial court found by a preponderance of the evidence possession of a gun, a fact that the jury had not found, to justify an extended term sentence. In an unpublished order filed in September 2001, the Appellate Division affirmed defendant's sentence. We denied defendant's petition for certification. *State v. Franklin,* 170 *N.J.* 389, 788 *A.*2d 773 (2001).

### B.

Defendant filed a petition for post-conviction relief (PCR), raising the same *Apprendi* claim he had argued on direct appeal. The PCR court denied defendant relief, and he appealed.

The Appellate Division, in an unpublished *per curiam* opinion, affirmed the denial of defendant's PCR petition. The panel concluded that because defendant previously had raised that issue on direct appeal, his petition for post-conviction relief was procedurally barred under *Rule* 3:22–5. The panel also concluded that the PCR court properly denied relief on the merits. Although acknowledging that the better practice would have been to submit a special interrogatory to the jury concerning whether defendant possessed or used a gun, the panel ruled that "it is not necessary to have a Graves Act sentencing factor found by a jury beyond a reasonable doubt." It determined "without any doubt" that the evidence "support[ed] the jury's manslaughter conviction and defendant's use or possession of a gun during commission of this crime." For that reason, the panel considered the jury's acquittal on the weapons offenses not to be "dispositive" of whether the

---

day jail term. We exercise our original jurisdiction to correct the sentence and impose a thirty-day concurrent term. *R.* 2:10–3, –5.

Graves Act applied to the manslaughter conviction. Indeed, the panel held "that the jury's verdict on manslaughter implicitly included defendant's use or possession of a firearm in committing that offense." In addition, it held that any possible error was "harmless beyond a reasonable doubt" because of the overwhelming evidence that defendant used a gun to kill the victim.

This Court granted defendant's petition for certification. *State v. Franklin*, 182 *N.J.* 147, 862 *A.*2d 56 (2004). We now reverse.

## II.

### A.

Defendant claims that the fact found by the judge—that he possessed or used a gun—was the functional equivalent of an element of a greater offense that had to be determined by a jury, and therefore the sentence violated his Sixth Amendment right to trial by jury and his Fourteenth Amendment right to due process. He contends that the Appellate Division erred by not accepting the jury findings on the verdict sheet and by disregarding the jury's acquittal on every gun-related charge in the indictment.

The State, represented by the Middlesex County Prosecutor, does not "contest the effect of *Apprendi* when the mandatory, extended-term provisions of the Graves Act, *N.J.S.A.* 2C:43–6(c), are involved." It does argue, however, that defendant's guilt of possessing a gun at the time of the killing is plainly established in the record, based not only on the testimony of witnesses, but also on defendant's admissions at trial as well as defense counsel's concessions in opening and closing arguments. The State submits that defendant admitted "the existence of [the] element" of possession or use, and therefore "defendant cannot prevail" even though the "element is not the subject of [the] verdict of guilty." The Attorney General, as *amicus curiae*, parts company with the Middlesex County Prosecutor and contends that the Graves Act is not constitutionally flawed.

B.

We first address the State's argument that defendant is procedurally barred because his *Apprendi* claim was raised and rejected on direct appeal. Ordinarily, such a "prior adjudication upon the merits" would be "conclusive," and we would dismiss the claim resurrected in the PCR proceedings. *R.* 3:22–5. That rule, however, is not an inflexible command. We recognize that when a "constitutional problem presented is of sufficient import to call for relaxation of the rules [related to post-conviction relief,] . . . we may consider the question on its merits." *State v. Johns*, 111 *N.J.Super.* 574, 576, 270 *A.*2d 59 (App.Div.1970), *certif. denied,* 60 *N.J.* 467, 291 *A.*2d 17, *cert. denied,* 409 *U.S.* 1026, 93 *S.Ct.* 473, 34 *L.Ed.*2d 319 (1972); *see also State v. Preciose,* 129 *N.J.* 451, 453–54, 477–78, 609 *A.*2d 1280 (1992) (holding that defendant's PCR claims were not procedurally barred for failure to raise them on direct appeal because "our traditions of comprehensive justice will best be served by decisions that reflect thoughtful and thorough consideration and disposition of substantive contentions").

This case falls into the very limited exception carved out of *Rule* 3:22–5. It raises a legitimate and important constitutional question concerning whether judges may determine facts that will authorize an extended term under the Graves Act. The issue undoubtedly will arise in other cases and any delay in addressing it disserves the public interest. Although this Court did not grant certification when the issue was clearly raised on direct appeal, *State v. Franklin,* 170 *N.J.* 389, 788 *A.*2d 773 (2001), we are not foreclosed from doing so now in the interest of justice. We therefore will not bar consideration of the issue on procedural grounds.

C.

We now determine whether the repeat-offender provision of the Graves Act is consistent with the dictates of the Sixth Amendment jury trial and Fourteenth Amendment due process guarantees. Recognizing the elevated danger to human life from gun-related

offenses, the Legislature passed the Graves Act "to ensure incarceration for those who arm themselves before going forth to commit crimes." *State v. Des Marets*, 92 *N.J.* 62, 68, 72, 455 *A.2d* 1074 (1983). The Act makes the use or possession of a firearm during the commission, attempted commission, or flight from the commission of certain designated offenses a sentencing factor that triggers the imposition of a mandatory term of imprisonment. *N.J.S.A.* 2C:43–6(c); *see also N.J.S.A.* 2C:44–3.

Under the Act's first-time offender provision, if the court finds that a defendant committed one of the designated offenses, *e.g.*, manslaughter, while possessing or using a firearm, the court is obligated to sentence the defendant to a period of parole ineligibility. *N.J.S.A.* 2C:43–6(c).[4] The court then must fix the parole ineligibility period "at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater, or 18 months in the case of a fourth degree crime." *Ibid.*

Under the repeat-offender provision, the court is required to sentence a person convicted of a second Graves Act offense to both an extended term *and* a parole disqualifier. *Ibid.* The Act provides that

[a] person who has been convicted of an offense enumerated by this subsection and who used or possessed a firearm during its commission, attempted commission or flight therefrom *and who has been previously convicted of an offense involving the use or possession of a firearm* as defined in [*N.J.S.A.*] 2C:44–3d.,[5] *shall be*

---

[4] Under *N.J.S.A.* 2C:43–6(c), the offenses subject to a mandatory term of imprisonment include the following: murder, *N.J.S.A.* 2C:11–3; manslaughter, *N.J.S.A.* 2C:11–4; aggravated assault, *N.J.S.A.* 2C:12–1(b); kidnapping, *N.J.S.A.* 2C:13–1; aggravated sexual assault, *N.J.S.A.* 2C:14–2(a); aggravated criminal sexual contact, *N.J.S.A.* 2C:14–3(a); robbery, *N.J.S.A.* 2C:15–1; burglary, *N.J.S.A.* 2C:18–2; escape, *N.J.S.A.* 2C:29–5; and possession of a firearm for an unlawful purpose, *N.J.S.A.* 2C:39–4(a).

[5] The Graves Act points to *N.J.S.A.* 2C:44–3(d), which defines "Second offender with a firearm":

The defendant ... has been previously convicted of any of the following crimes: 2C:11–3 [murder], 2C:11–4 [manslaughter], *2C:12–1b. [aggravated assault]*, 2C:13–1 [kidnapping], 2C:14–2a. [aggravated sexual assault], 2C:14–3a. [aggravated criminal sexual contact], 2C:15–1 [robbery], 2C:18–2

*sentenced by the court to an extended term* as authorized by [*N.J.S.A.*] 2C:43–7c., notwithstanding that extended terms are ordinarily discretionary with the court. [*Ibid.* (emphasis added).]

An extended term subjects a second-time Graves Act offender to a sentence one degree higher and a parole ineligibility term to "be fixed at or between one-third and one-half of the sentence imposed by the court or five years, whichever is greater." *N.J.S.A.* 2C:43–7(c).

Under the Graves Act scheme, the sentencing judge, not the jury, makes the finding of whether the defendant possessed or used a firearm while committing the offense. *N.J.S.A.* 2C:43–6(d). The Act provides that

[t]he court shall not impose a mandatory sentence pursuant to [the Graves Act] ... unless the ground therefor has been established at a hearing. At the hearing, which may occur at the time of sentencing, the prosecutor shall establish *by a preponderance of the evidence* that the weapon *used or possessed* was a firearm. In making its finding, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing, or other court proceedings and shall also consider the presentence report and any other relevant information. [*Ibid.* (emphasis added).]

Significantly, because the Legislature denominated use or possession of the firearm as a sentencing factor, rather than an element of an offense, the court is guided by the lower preponderance of the evidence standard and may rely on any relevant evidence, including evidence that would be inadmissible at trial. *See State v. Stewart,* 96 *N.J.* 596, 605–06, 477 *A.*2d 300 (1984).

Defendant does not contest that at the time of his trial in this case he had a prior Graves Act conviction. Although the jury's finding of passion/provocation manslaughter subjected defendant to the second-degree sentencing range of five to ten years, the judge's finding that he committed that crime while armed subjected him to the first-degree sentencing range of ten to twenty years.

---

[burglary], 2C:29–5 [escape], 2C:39–4a. [possession of firearm for unlawful purposes], ... *and he used or possessed a firearm, as defined in 2C:39–1f., in the course of committing or attempting to commit any of these crimes, including the immediate flight therefrom.*
[*N.J.S.A.* 2C:44–3(d) (emphasis added).]

Viewed in a different light, the Legislature has created the greater crime of "first-degree passion/provocation manslaughter *while armed*," but instead of designating gun possession or use as an element of that offense, the Legislature made it a sentencing factor to be decided by a judge, rather than a jury, by the preponderance of the evidence standard.

### III.

### A.

We now measure the repeat-offender provision of the Graves Act against the constitutional guarantees of due process under the Fourteenth Amendment and right to trial by jury under the Sixth Amendment. We begin our analysis with the fundamental premise that all elements of an offense "must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi, supra,* 530 *U.S.* at 476, 120 *S.Ct.* at 2355, 147 *L.Ed.*2d at 446 (internal quotations omitted); *see also State v. Fortin,* 178 *N.J.* 540, 633, 843 *A.*2d 974 (2004). From its early incarnation in the common law, predating the United States Constitution, "trial by jury has been understood to require that '*the truth of every accusation,* whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours.'" *Apprendi, supra,* 530 *U.S.* at 477, 120 *S.Ct.* at 2356, 147 *L.Ed.*2d at 447 (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 343 (1769) (alteration in original)).

In recent years, the United States Supreme Court has searched to find a principled way to distinguish between an element of an offense to be decided by a jury and a sentencing factor to be decided by a judge. In approaching that issue, the Court has noted that " '[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Id.* at 490, 120 *S.Ct.* at 2363, 147 *L.Ed.*2d at 455 (quoting *Jones v.*

*United States,* 526 *U.S.* 227, 252–53, 119 *S.Ct.* 1215, 1228, 143 *L.Ed.*2d 311, 332 (1999) (Stevens, J., concurring)). In deciding the question of what facts must be subject to a jury finding, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494, 120 *S.Ct.* at 2365, 147 *L.Ed.*2d at 457. In *Apprendi, supra,* the Court devised a formula to distinguish between an element of an offense and a sentencing factor: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455.

In many ways, *Apprendi, supra,* which examined New Jersey's "hate crime" statute, *N.J.S.A.* 2C:44–3(e) (repealed 2001), mirrors the case before us. In that case, the defendant fired several shots "into the home of an African–American family that had recently moved into a previously all-white neighborhood in Vineland, New Jersey." *Id.* at 469, 120 *S.Ct.* at 2351, 147 *L.Ed.*2d at 442. The defendant pled guilty to two counts of second-degree possession of a firearm for an unlawful purpose, *N.J.S.A.* 2C:39–4(a), as well as to a lesser charge. *Id.* at 469–70, 120 *S.Ct.* at 2352, 147 *L.Ed.*2d at 442. Based solely on the second-degree charges to which he pled guilty, the judge was authorized to impose a prison term of five to ten years. *Id.* at 468–69, 120 *S.Ct.* at 2351–52, 147 *L.Ed.*2d at 442. However, under the " 'enhanced' " sentencing provision of the hate crime statute, the judge could impose a sentence within the first-degree range of ten to twenty years, based on the judge's finding, by "a preponderance of the evidence," that the crime was committed " 'with a purpose to intimidate an individual or group of individuals' " for reasons such as race or color. *Id.* at 468–70, 120 *S.Ct.* at 2351–52, 147 *L.Ed.*2d at 442–43 (quoting *N.J.S.A.* 2C:44–3(e) (repealed 2001)). After a sentencing hearing, the trial court determined by the " 'preponderance of the evidence' " standard " 'that the crime was motivated by racial bias' " and imposed a twelve-year prison term, which was two years above the "statutory

maximum" for a second-degree crime. *Id.* at 470–71, 120 *S.Ct.* at 2352, 147 *L.Ed.*2d at 443.

The Court held that the judge's sentencing enhancement "turn[ed] a second-degree offense into a first-degree offense" under New Jersey's Code of Criminal Justice. *Id.* at 494, 120 *S.Ct.* at 2365, 147 *L.Ed.*2d at 457. In other words, the finding of racial bias increased the sentence beyond the statutory maximum for a second-degree crime and therefore had to "be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455. As such, the defendant's motive, which the statute denominated as a sentencing factor, was in truth "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.* at 494, 494 n. 19, 120 *S.Ct.* at 2365, 2365 n. 19, 147 *L.Ed.*2d at 457, 457 n. 19. The Court therefore found the hate crime statute to be "an unacceptable departure from the jury tradition" and declared the defendant's sentence unconstitutional. *Id.* at 497, 120 *S.Ct.* at 2366–67, 147 *L.Ed.*2d at 459.

 In all relevant respects, the second-offender provision of the Graves Act is a carbon copy of the hate crime statute declared unconstitutional in *Apprendi, supra.* Like the hate crime statute, the Graves Act permits judicial factfinding by a preponderance of the evidence "to turn a second-degree offense into a first-degree offense." *Id.* at 494, 120 *S.Ct.* at 2365, 147 *L.Ed.*2d at 457. Like motive under the hate crime statute, possession of a gun under the Graves Act is the "functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.* at 494 n. 19, 120 *S.Ct.* at 2365 n. 19, 147 *L.Ed.*2d at 457 n. 19.

In *Blakely v. Washington,* the Supreme Court noted that "[i]n a system that punishes burglary with a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10–year sentence … by reason of the Sixth Amendment" jury trial right. 542 *U.S.* 296, ——, 124 *S.Ct.* 2531, 2540, 159 *L.Ed.*2d 403 (2004). Similarly, in this case, the Code of Criminal Justice punishes passion/provoca-

tion manslaughter with a ten-year maximum sentence with an added ten-year maximum term for possession or use of a gun. As such, defendant is entitled to no more than the ten-year sentence authorized by the jury verdict.

In our system of criminal justice, a defendant must have notice of the elements of the crimes with which he is charged. *See, e.g., State v. Wein*, 80 *N.J.* 491, 497, 404 *A.*2d 302 (1979) ("The indictment must charge the defendant with the commission of a crime in reasonably understandable language setting forth all of the critical facts and each of the essential elements which constitute the offense alleged."); *see also N.J. Const.* art. I, ¶ 8 ("No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury...."). That a defendant possessed a gun during the commission of a crime is a *fact* that must be presented to a grand jury and found by a petit jury beyond a reasonable doubt if the court intends to rely on it to impose a sentence exceeding the statutory maximum.

Simply put, the second-offender provision of the Graves Act removed from the jury's consideration a critical fact—whether defendant was armed. That fact was the "functional equivalent" of an element of a first-degree offense. The judge's finding that defendant possessed or used a gun in the commission of the crime resulted in the imposition of a sentence beyond the range authorized by the jury verdict in violation of the Sixth Amendment and Fourteenth Amendment. *See Blakely, supra*, 542 *U.S.* at ——, 124 *S.Ct.* at 2537–38, 159 *L.Ed.*2d 403; *Apprendi, supra*, 530 *U.S.* at 497, 120 *S.Ct.* at 2366–67, 147 *L.Ed.*2d at 459.[6]

---

[6] Our constitutional holding is not in conflict with *State v. Figueroa*, which upheld a defendant's sentence to a Graves Act *parole disqualifier* within the standard sentencing range based upon a judicial finding that the defendant possessed a gun during the offense. 358 *N.J.Super.* 317, 318, 325, 817 *A.*2d 982 (App.Div.2003). As indicated in *State v. Abdullah*, 184 *N.J.* 497, 511–12, 878 *A.*2d 755 (2005), also decided today, we find no constitutional impediment to a court's imposition of a parole disqualifier pursuant to *N.J.S.A.* 2C:43–6(b) based on judicial factfinding.

B.

■ We next address the State's arguments that the judge's finding that defendant possessed a gun at the time of the killing was "implicit in the record" or, alternatively, that defendant's admissions at trial provided an adequate basis for Graves Act sentencing enhancements under *Blakely, supra,* and *Apprendi, supra.* First, we agree with the trial judge and the Appellate Division that there was overwhelming, and perhaps indisputable, evidence that defendant used a handgun when he killed Warmack. Had the jury found that defendant used or possessed the gun while committing manslaughter, there is no question that the extended term imposed by the sentencing court would have complied with the Sixth Amendment. *Apprendi, supra,* 530 *U.S.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455. But the State did not charge defendant in the indictment with murder while armed or passion/provocation manslaughter while armed and did not submit those charges to the jury.

■ As discussed earlier, possession or use of the gun was an element that, in effect, raised second-degree passion/provocation manslaughter to a first-degree crime. Even overwhelming evidence of guilt is not a substitute for failing to charge an element of an offense. For example, if the State charged defendant only with second-degree robbery, *N.J.S.A.* 2C:15–1, and he were convicted by a jury, a court could not sentence him for first-degree armed robbery, *N.J.S.A.* 2C:15–1(b), even in the face of overpowering evidence that he was armed in the commission of that offense. *See State v. Anderson,* 127 *N.J.* 191, 208–09, 603 *A.*2d 928 (1992) ("[I]n a criminal prosecution in which the accused has a constitutional right to a trial by jury, each element of the crime must be decided by the jury and none of those elements may be withheld from the jury and decided by the judge as a matter of law."). On appellate review, we cannot find that the State satisfied an element of an offense that was never presented to the jury.

██ Because the jury was not asked whether defendant used or possessed a gun in killing Warmack, the jury did not answer that simple question one way or the other. We will not speculate why the jury acquitted defendant of two counts of possession of a firearm with an unlawful purpose and three counts of knowingly, under circumstances manifesting extreme indifference to human life, pointing that firearm in the direction of his wife and two children. It is important to remember that "a jury, once properly charged, has the power to disregard even overwhelming proof of culpability and either acquit entirely or convict of a lesser-included offense." *State v. Crisantos (Arriagas)*, 102 *N.J.* 265, 273, 508 *A*.2d 167 (1986); *see also State v. Ingenito*, 87 *N.J.* 204, 212, 432 *A*.2d 912 (1981) ("Indeed, a jury has the prerogative of returning a verdict of innocence in the face of overwhelming evidence of guilt.").[7]

██ We also reject the State's argument that defendant's trial admissions and his attorney's trial concessions were a sufficient basis for the judge to impose an extended Graves Act sentence. Had the charge of possession or use of a gun to commit passion/provocation manslaughter been submitted to the jury, defendant's trial testimony could have been used to support a conviction on that count. The charge, however, must *precede* presentation of the evidence. Courts should not engage in an after-the-fact review of the record to determine whether the State's evidence fits an offense with which defendant was never charged.

The State expansively reads *Blakely, supra,* to support its argument that a defendant's trial admissions may be used to justify an extended term. *See* 542 *U.S.* at ——, 124 *S.Ct.* at 2537,

---

[7] The approach we take today is compatible with our holding in *State v. Johnson*, 166 *N.J.* 523, 766 *A*.2d 1126 (2001). In that case, because the jury returned on the verdict sheet the necessary predicate crimes to support a No Early Release Act (NERA) parole disqualifier within the standard sentencing range, we upheld the trial court's finding that the defendant committed a " 'violent crime' " for NERA parole disqualifier purposes. *Id.* at 527, 529, 545–46, 766 *A*.2d 1126.

159 *L.Ed.*2d 403. We disagree with that interpretation. In *Blakely, supra,* the Supreme Court reviewed the State of Washington's criminal sentencing scheme in the context of the defendant's guilty plea to the abduction of his estranged wife. *Id.* at ——, 124 *S.Ct.* at 2534, 159 *L.Ed.*2d 403. At his plea hearing, the defendant admitted to the elements of second-degree kidnapping and allegations of domestic violence and use of a firearm, "but no other relevant facts." *Id.* at ——, 124 *S.Ct.* at 2534–35, 159 *L.Ed.*2d 403. Under Washington's sentencing system, second-degree kidnapping was punishable by a term of imprisonment not to exceed ten years. *Id.* at ——, 124 *S.Ct.* at 2535, 159 *L.Ed.*2d 403. In accordance with a "plea agreement, the State recommended a sentence within the 'standard range' " for second-degree kidnapping with a firearm—forty-nine to fifty-three months. *Id.* at ——, 124 *S.Ct.* at 2535, 159 *L.Ed.*2d 403.

Based on the victim's "description of the kidnaping, however, the judge" determined that the defendant "had acted with 'deliberate cruelty,' " and sentenced the defendant to an "exceptional" term of ninety months in accordance with Washington law. *Id.* at ——, 124 *S.Ct.* at 2535, 159 *L.Ed.*2d 403. That sentence exceeded by thirty-seven months the maximum sentence in the standard range authorized by defendant's admissions at his guilty plea. *Id.* at ——, 124 *S.Ct.* at 2535, 159 *L.Ed.*2d 403. The Court observed that the trial court's factfinding of " 'deliberate cruelty' " was "neither admitted by [the defendant] nor found by a jury." *Id.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403.

In summarizing its holding, the Court stated that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403. Viewed out of context, that passage might suggest that the trial court could use a defendant's trial admissions to prove a fact that supports a sentence exceeding the statutory maximum. But in *Blakely, supra,* the admissions referred to by the Court were in the context of a plea hearing. *Id.*

at ——, 124 *S.Ct.* at 2534, 159 *L.Ed.*2d 403. Moreover, the *Blakely* Court did not authorize judges in a jury trial setting to find facts that would raise the sentence above the statutory maximum, unless the defendant consented to judicial factfinding. *Id.* at ——, 124 *S.Ct.* at 2541, 159 *L.Ed.*2d 403. That point is made clear in the following passage:

> When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. *Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements,* which may well be in his interest if relevant evidence would prejudice him at trial.
>
> [*Id.* at ——, 124 *S.Ct.* at 2541, 159 *L.Ed.*2d 403 (citations omitted) (emphasis added).]

The references to the use of a defendant's admissions to support enhanced sentencing were limited to the factual contexts in which *Blakely, supra,* and *Apprendi, supra,* arose: a defendant's guilty plea. Absent consent to judicial factfinding, a judge may sentence the defendant only within the range authorized by the jury's verdict, unless the judge relies on the fact of a prior conviction to give an extended term. *Id.* at ——, 124 *S.Ct.* at 2536, 159 *L.Ed.*2d 403; *see also Apprendi, supra,* 530 *U.S.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455.[8] In the pre-*Apprendi* days of the sentencing hearing in this case, the court, prosecutor, and defense counsel did not question the constitutional validity of the second-offender provision of the Graves Act. Defendant did not knowingly consent to the use of his trial admissions for the purpose of imposing a sentence twice as long as the maximum sentence authorized by the jury's verdict.

For the reasons we detailed earlier, the State must charge the defendant with each element it intends to prove, and the jury must

---

[8] *See Almendarez–Torres v. United States,* 523 *U.S.* 224, 243, 118 *S.Ct.* 1219, 1230, 140 *L.Ed.*2d 350, 368 (1998), in which the Court upheld a trial court's imposition of an extended sentence based on the defendant's admitted prior convictions. *Apprendi, supra,* 530 *U.S.* at 487–88, 120 *S.Ct.* at 2361–62, 147 *L.Ed.*2d at 453–54.

be satisfied beyond a reasonable doubt that each element has been proven. "[T]he relevant inquiry is one not of form, but of effect...." *Apprendi, supra,* 530 *U.S.* at 494, 120 *S.Ct.* at 2365, 147 *L.Ed.*2d at 457. In this case, possession or use of a gun, *in effect,* was the functional equivalent of an element of a first-degree crime of passion/provocation manslaughter *while armed.*

## C.

Our holding here is consistent with our reasoning in *Natale II, supra,* 184 *N.J.* at 495–96, 878 *A.*2d at 745–46. A defendant's admissions at trial may be used by courts to sentence a defendant within the sentencing range authorized by the jury verdict under the remedy set forth today in *Natale II, supra. Id.* at 495, 878 *A.*2d at 745. Moreover, our holding in this case does not prevent a court from imposing a Graves Act minimum parole ineligibility term within the sentencing range authorized by the verdict. *See State v. Abdullah,* 184 *N.J.* 497, 511–12, 878 *A.*2d 755 (2005). As always, a defendant's admissions at trial may be considered by the court in identifying and weighing aggravating and mitigating factors. *See N.J.S.A.* 2C:44–1(f)(1); *see also Natale II, supra,* 184 *N.J.* at 495–96, 878 *A.*2d at 745–46.

We will conform the Graves Act to the Constitution in the way we believe the Legislature would have intended under the present circumstances, rather than let the second-offender provision perish completely. *Natale II, supra,* 184 *N.J.* at 485–86, 878 *A.*2d at 739–40; *see also Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 104, 462 *A.*2d 573 (1983); *N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n,* 82 *N.J.* 57, 75, 411 *A.*2d 168 (1980). *N.J.S.A.* 2C:43–6(d) no longer will empower judges to decide whether a defendant possessed or used a gun in second-offender cases. In the future, if the State intends to seek an extended term under the Graves Act, it must obtain an indictment charging possession or use of the gun in the commission of one of the designated crimes and then submit the charge to

the jury. That remedy not only complies with the dictates of *Apprendi, supra*, but also best achieves the Legislature's purpose in enacting the Graves Act. *Natale II, supra*, 184 *N.J.* at 489–90, 878 *A.*2d at 742.

### D.

We recognize today's holding as a "new rule of law," compelled by *Apprendi, supra. See Natale II, supra*, 184 *N.J.* at 492–96, 878 *A.*2d at 744–46; *see also State v. Knight*, 145 *N.J.* 233, 249, 678 *A.*2d 642 (1996). For the same reasons detailed in *Natale II, supra*, we apply "pipeline retroactivity" to defendants with cases on direct appeal as of the date of this decision and to those defendants who raised *Apprendi* claims at trial or on direct appeal. 184 *N.J.* at 494, 878 *A.*2d at 745. We believe that this approach "best balances principles of fairness and repose." *Ibid.*

### IV.

We conclude that the second-offender provision of the Graves Act, which permits the imposition of an extended term based on judicial factfinding by a preponderance of the evidence, violates a defendant's Sixth Amendment right to trial by jury and Fourteenth Amendment right to due process. Defendant was sentenced to a twenty-year extended term with a ten-year parole disqualifier under the Graves Act. We reverse, vacate that sentence, and remand to the trial court for resentencing in accordance with this opinion and our opinion in *Natale II, supra*, 184 *N.J.* at 495–96, 878 *A.*2d at 745–46.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.