615 A.2d 642

STATE OF NEW JERSEY, IN THE INTEREST
OF T.B., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 27, 1992—Decided September 29, 1992.

Before Judges CONLEY and PESKOE.

*Wilfredo Caraballo,* Public Defender, attorney for juvenile-appellant (*Robert L. Sloan,* Assistant Deputy Public Defender, of counsel and on the brief).

*W. Michael Murphy, Jr.,* Morris County Prosecutor (*Joseph Connor, Jr.,* Assistant Prosecutor, on the brief).

PESKOE, J.S.C. (Temporarily assigned).

In two separate proceedings in 1990 T.B. faced a variety of charges. Three complaints (FJ–14–1614–90, FJ–14–1953–90, FJ–14–1954–90) stemmed from conduct he engaged in at a party on March 3, 1990, while he was a juvenile. On September 13, 1990, after a two-day trial on those charges T.B. was adjudicated a delinquent. He was found guilty of conduct that constituted violations of *N.J.S.A.* 2C:12–1b(1), aggravated assault perpetrated purposely or knowingly or under circumstances manifesting extreme indifference to life, a second degree offense, and of *N.J.S.A.* 2C:18–2, burglary of a telephone, a third degree offense. He was found not guilty of violations of *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:18–2, conspiracy to commit burglary. Other charges were dismissed (*N.J.S.A.* 2C:5–1, *N.J.S.A.* 2C:20–3, attempted theft) or merged into the burglary conviction (*N.J.S.A.* 2C:17–3, criminal mischief involving pecuniary loss of less than $500, *N.J.S.A.* 2C:18–3, criminal mischief).

The second proceeding on October 31, 1990 involved two drug-related incidents that occurred while T.B. was still a juvenile and other charges resulting from misconduct during his confinement in the Morris County Youth Center when he was already eighteen. Two complaints encompassed the drug-related charges, FJ–14–1949–90 based on a May 25, 1990 apprehension and FJ–14–1058–90 based on that of June 2, 1990. Each complaint charged T.B. with conduct that constituted violations of *N.J.S.A.* 2C:35–10(a)(1), possession of a controlled substance, and *N.J.S.A.* 2C:35–5, possession of a controlled substance with intent to distribute, a third degree offense. The June 2 charges also included alleged violations of *N.J.S.A.* 2C:29–2, resisting arrest, a fourth degree offense, and *N.J.S.A.* 2C:12–1(a), simple assault, a disorderly persons offense. At what was essentially a waiver hearing, T.B. pleaded guilty to various charges including those that arose from the altercation in the Youth Center and two counts of possession of a controlled substance with intent to distribute.

Dispositions as to all charges were ordered by Judge Ahto on January 7, 1991. For the aggravated assault T.B. was sentenced to sixty days incarceration with full credit for time served; a $100 fine; restitution of $1,452.93 and a $15 Violent Crimes Compensation Board (VCCB) penalty. For the drug-related incidents he was sentenced to concurrent indeterminate detention sentences of no more than 18 months; a Drug Enforcement Demand Reduction (D.E.D.R.) assessment of $1000; laboratory penalties of $25 for each offense; a $15 VCCB penalty for each offense; and two consecutive one-year suspensions of driving privileges. For resisting arrest he was sentenced to a $50 fine and a $15 VCCB penalty. With respect to the incident at the Youth Center he was sentenced to six days imprisonment for harassment and fifteen days for assault with full credit for time served; a $100 fine on each charge; a $15 VCCB penalty for each; and costs of $30.

Defendant filed a notice of appeal on May 21, 1991. Thereafter, on July 12, 1991 he applied for an emergency order of limited remand to reconsider the disposition. The order was granted July 15, 1991 and a hearing was held July 17, 1991. Judge Ahto then terminated the remand order and placed defendant on probation for one year; ordered him to undergo random urinalysis and to complete his GED; and directed him to pay $100 per week toward the fines and restitution. If T.B. returned to school the payment would be reduced to $50 per week. He appeared before the judge again on March 2, 1992 because a urinalysis showed marijuana in defendant's urine. He was then sentenced to 90 days in the Sheriff's Labor Assistance Program (SLAP), subject to conversion to jail time should he miss school, be expelled from school or fail to attend SLAP.

Defendant seeks a reversal of the conviction for aggravated assault and, with respect to the drug offenses, modification of the restitution award and elimination of consecutive driving privilege suspensions on the following grounds:

I. IN THE ABSENCE OF EVIDENCE THAT THE JUVENILE HAD CAUSED SERIOUS BODILY INJURY OR PURPOSELY ATTEMPTED TO CAUSE IT, THE ADJUDICATION OF DELINQUENCY OF AGGRAVATED ASSAULT VIOLATED HIS RIGHT TO DUE PROCESS OF LAW.

II. SINCE THE RESTITUTION ORDER DID NOT REFLECT THE JUVENILE'S CULPABILITY, HIS RESPONSIBILITY FOR THE VICTIM'S LOSSES, AND HIS ABILITY TO PAY RESTITUTION, IT VIOLATED HIS RIGHT TO DUE PROCESS OF LAW AND FUNDAMENTAL FAIRNESS.

III. THE IMPOSITION OF CONSECUTIVE SUSPENSIONS OF DRIVING PRIVILEGES VIOLATED *N.J.S.A.* 2C:35–16.

Of these grounds, only the first two were raised below. We have, however, carefully considered all three contentions and the arguments advanced by defendant in support of them and find that they are clearly without merit. *R.*2:11–3(e)(2). However, further comment as to the propriety of the consecutive driving privilege suspensions is appropriate.

Defendant argues that the court improperly ordered his driving privileges to be suspended for two consecutive one-year periods. He urges this court to follow the reasoning, in *dictum,* of *State in Interest of J.R.,* 244 *N.J.Super.* 630, 641, 583 *A.*2d 376 (App.Div.1990) where *N.J.S.A.* 2C:35–16 was said not to permit consecutive license suspensions. In *J.R.* the negotiated disposition had been specifically for a concurrent sentence. The matter was remanded for further proceedings with respect to the sentence imposed on defendant consistent with the plea agreement and to permit him an opportunity to address the judge directly. In doing so the court said that "(W)hereas forfeitures for adults are to commence on the date sentence is imposed, with respect to juveniles, the period is to run from the day after the person reaches the age of seventeen years, with multiple suspensions running concurrently from that date. Hence we do not read *N.J.S.A.* 2C:35–16 as permitting consecutive license suspensions, . . .") *State in the Interest of J.R.,* *supra.* at p. 641, 583 *A.*2d 376. See also *State v. Blow,* 237 *N.J.Super.* 184, 567 *A.*2d 253 (App.Div.1989), rev. on other grounds, 123 *N.J.* 472, 588 *A.*2d 821 (1991). We disagree.

The provisions of *N.J.S.A.* 2C:35–16 apply to adjudications of delinquency for any offense defined in the Comprehensive Drug Reform Act of 1986 (*N.J.S.A.* 2C:35–1 et seq.) or involving Drug Paraphernalia (*N.J.S.A.* 2C:36–1 et seq.). *N.J.S.A.* 2C:35–16 provides that "(i)n addition to any disposition authorized by statute, a person adjudicated delinquent on a drug-related charge" "shall forthwith forfeit" his driving privileges for "a period to be fixed by the court at not less than six months or more than two years." Thus a driving privilege sanction is mandatory for a drug-related offense. It is the statutory requirement that the suspension "shall commence on the day the sentence is imposed" that provided the basis for the *dicta* in *J.R.* that consecutive sentences are prohibited. We think, however, that the legislative intention was to insure immediate suspensions of drivers' licenses not to deal with consecutive sentences.

Moreover, we note *N.J.S.A.* 2C:35–16 further provides that if the driving privilege has been revoked or suspended or postponed for "violation of any provision of *this* title or Title 39 of the Revised Statutes at the time of any conviction or adjudication of delinquency for a violation of any offense defined *in this chapter* or chapter 36 of this title, the revocation, suspension, or postponement period imposed *herein* shall commence as of the date of termination of the existing revocation, suspension or postponement." (emphasis supplied). It is, therefore, clear that the Legislature contemplated multiple driving privilege sanctions, if a person is adjudicated delinquent for more than one offense and is sentenced at different times.

There cannot be any valid reason for the Legislature to mandate separate driving privilege penalties for separate violations where the sentences are imposed on separate days and to treat differently separate violations, dispositions for which are ordered on the same day. We thus do not read the reference to a suspension that "shall commence on the day sentence is imposed" as a limitation on a judge's discretion to sentence as

appropriate. *State v. Yarbough,* 100 *N.J.* 627, 498 *A.*2d 1239 (1985).

Judge Ahto ordered that each suspension, in accordance with *N.J.S.A.* 2C:35–16 was for one year. Thus the total time for which defendant's driving privileges were to be suspended equaled, but did not exceed the maximum suspension permitted by statute for one offense. T.B.'s drug offenses were committed on separate occasions and involved separate quantities of cocaine. Had his driving privilege been revoked or suspended or postponed at the time of sentencing, in accordance with the statute, the suspension imposed by Judge Ahto on January 7, 1991 would "commence as of the date of termination of the existing revocation, suspension or postponement." The imposition of consecutive driving privilege penalties under the circumstances here was not an abuse of discretion. The order under review is affirmed.