134 N.J. 382 (1993)
634 A.2d 473
STATE OF NEW JERSEY IN THE INTEREST OF T.B., JUVENILE-APPELLANT.
The Supreme Court of New Jersey.
Argued May 3, 1993.
Decided August 3, 1993.
*383 Robert L. Sloan, Assistant Deputy Public Defender, argued the cause for appellant (Zulima V. Farber, Public Defender, attorney).
Joseph Connor, Jr., Assistant Prosecutor, argued the cause for respondent (W. Michael Murphy, Jr., Morris County Prosecutor, attorney).
PER CURIAM.
The question in this appeal is whether an offender being sentenced on the same date for multiple drug offenses shall receive consecutive or concurrent suspensions of driving privileges for each of the drug offenses disposed of on that date. N.J.S.A. 2C:35-16 (section 16 or the statute) imposes on every person convicted of a drug offense a mandatory suspension of driving privileges for a period ranging from six months to two years. We granted certification, 133 N.J. 428, 627 A.2d 1135 (1992), to resolve a split in the Appellate Division on the issue of the power of a sentencing court to impose consecutive versus concurrent suspensions under section 16. The arguments in favor of either outcome are evenly balanced. We conclude that because sufficient flexibility exists in the range of the suspensions the court may impose, the concurrent suspension of driving privileges more closely reflects the Legislature's intent concerning this sanction and will best advance the efficient trial and disposition of multiple drug offenses.

I
We need not recite the facts in detail. The case concerns incidents that occurred while T.B. was a juvenile. The provisions of section 16 apply to both adult and juvenile offenders and displace other sentencing provisions applicable to juveniles.
The first incident, on March 3, 1990, involved a melee at a party; the second incident arose from a May 25, 1990, report by T.B.'s mother that she had found fourteen vials of cocaine in his bedroom; the third incident arose from a June 2, 1990, encounter with *384 police seeking to arrest T.B.'s brother, in the course of which encounter the police found eighty vials of cocaine on T.B.
T.B. was tried and adjudicated a delinquent on some of the counts. He entered admissions to two counts of criminal possession of drugs. The juvenile court sentenced T.B. on one date for all of the offenses. On each of the drug counts the court imposed an indeterminate period of detention with a maximum of eighteen months, various statutory fines and penalties, and a one-year suspension of driving privileges. The court made the detention sentences concurrent. It specified that the two one-year license revocations should be consecutive to each other. T.B. appealed the disposition of the drug offenses, specifically claiming that section 16 bars the imposition of consecutive periods of suspension of driving privileges. The Appellate Division affirmed the trial court's imposition of consecutive periods of suspension under section 16. 260 N.J. Super. 122, 615 A.2d 642 (1992). In addition, it held that the imposition of consecutive driving-privilege penalties under the circumstances was not an abuse of discretion. Id. at 127, 615 A.2d 642. Our grant of certification is limited to the license-suspension issue.

II
The statute provides, in pertinent part:
2C:35-16. Mandatory forfeiture or postponement of driving privileges.
In addition to any disposition authorized by this title, the provisions of section 24 of P.L. 1982, c. 77 (C. 2A:4A-43) [of the New Jersey Code of Juvenile Justice], or any other statute indicating the dispositions that can be ordered for an adjudication of delinquency, and notwithstanding the provisions of subsection c. of N.J.S. 2C:43-2 every person convicted of or adjudicated delinquent for a violation of any offense defined in this chapter or chapter 36 of this title shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period to be fixed by the court at not less than six months or more than two years which shall commence on the day the sentence is imposed. In the case of any person who at the time of the imposition of sentence is less than 17 years of age, the period of the suspension of driving privileges authorized herein, including a suspension of the privilege of operating a motorized bicycle, shall commence on the day the sentence is imposed and shall run for a period as fixed by the court of not less than six months or more than two years after the day the person reaches the age of 17 years. If the driving *385 privilege of any person is under revocation, suspension, or postponement for a violation of any provision of this title or Title 39 of the Revised Statutes at the time of any conviction or adjudication of delinquency for a violation of any offense defined in this chapter or chapter 36 of this title, the revocation, suspension, or postponement period imposed herein shall commence as of the date of termination of the existing revocation, suspension, or postponement.
The Legislature added the language concerning the commencement of the suspension periods and the effect of a prior loss of driving privileges in an amendment effective June 28, 1988. L. 1988, c. 44, § 7. The statute also had previously given the Director of the Division of Motor Vehicles the discretion to restore licenses after a six-month suspension period had expired.
Each party claims that the plain language of the statute dictates the result. T.B. relies on the fact that the statute specifically states that the period of suspension "shall commence on the day the sentence is imposed." (Emphases added). He contends that only two circumstances will postpone the period of suspension: (1) the offender is under the age of seventeen and thus not a legal driver, in which event suspension commences when the offender reaches the age of seventeen; and (2) the offender is already under suspension, in which event the new suspension "shall commence as of the date of termination of the existing revocation, suspension, or postponement."
The State emphasizes that section 16 provides that the suspension provisions apply to "every person" who is convicted of or adjudicated a delinquent for "a violation of any offense" defined in the relevant drug codes. (Emphases added). It views that language as incompatible with any legislative desire automatically to impose concurrent suspensions no matter how appropriate consecutive suspensions would be. That sentencing courts have discretion to impose consecutive sentences in appropriate cases is a long-standing common-law principle. That principle is codified in the Code of Criminal Justice. N.J.S.A. 2C:44-5a. The conferring of such discretion is nothing more than a recognition that a rational system of criminal justice cannot automatically award free crimes. Given that long tradition, the State reasons that the *386 Legislature would have prohibited consecutive license suspensions only in unmistakably-clear terms if that had been its intent.
In addition, the State relies on the Legislature's goal to deter youthful offenders. Concurrent dispositions would lead such offenders to believe that they have less to lose through repeated violations of the law. No "separate sting" would deter such a youthful offender, knowing that license suspensions would be concurrent. Here, although the sentencing court could have imposed two-year concurrent suspensions on each of the counts, as it did with respect to the detention, the court specifically broke down the license-suspension portion of the sentence in part to demonstrate the additional punishment that should be meted out for the second offense. Finally, concurrent suspension would also confer a windfall on defendants who fortuitously receive concurrent dispositions of drug offenses on the same date.
The Appellate Division agreed with the State's position. It held:
There cannot be any valid reason for the Legislature to mandate separate driving privilege penalties for separate violations where the sentences are imposed on separate days and to treat differently separate violations, dispositions for which are ordered on the same day. We thus do not read the reference to a suspension that "shall commence on the day sentence is imposed" as a limitation on a judge's discretion to sentence as appropriate.
[260 N.J. Super. at 126-27, 615 A.2d 642.]
In State v. Blow, 237 N.J. Super. 184, 567 A.2d 253 (App.Div. 1989), rev'd on other grounds, 123 N.J. 472, 588 A.2d 821 (1991), the defendant received consecutive suspensions of twenty-four and twelve months despite a statement in the written plea agreement that the suspension would be between six and twenty-four months. In reducing the suspension to twenty-four months the court relied in part on the statutory language indicating that a single period of suspension may be imposed:
The other provisions, concerning the forensic laboratory fee and the drug enforcement and demand reduction penalty, specifically noted that the stated penalty would apply "for each offense." N.J.S.A. 2C:35-16 provides that every person convicted of any offense shall forfeit his right to drive, not that each person shall forfeit the right to drive for each offense. Compare N.J.S.A 2C:35-16 with *387 N.J.S.A. 2C:35-20. The plain language of appellant's plea is in accordance with our interpretation of section 16, i.e., that appellant would be required to forfeit his driver's license for a period of 6 to 24 months.
[Id. 237 N.J. Super. at 194, 567 A.2d 253.]
Relying on Blow, another panel of the Appellate Division reached the same conclusion in State ex rel. J.R., 244 N.J. Super. 630, 640-41, 583 A.2d 376 (1990):
We note, however, that whereas forfeitures for adults are to commence on the date sentence is imposed, with respect to juveniles, the period is to run from the day after the person reaches the age of seventeen years, with multiple suspensions running concurrently from that date. Hence, we do not read N.J.S.A 2C:35-16 as permitting consecutive license suspensions, although different durations can be imposed on each conviction. Cf. State v. Blow, supra.

Although our reading of the statute may have no practical effect on the disposition of this case, because a court would be free to impose a suspension of twenty-four months on any one of the drug-possession counts, we believe that the proper interpretation of section 16 is that mandatory license revocations imposed on a single sentencing occasion be concurrent.
Ordinarily, enhanced-penalty statutes, of which the consecutive-feature provision of section 16 is a variant, apply to chronologically-sequential convictions and not to simultaneous convictions. State v. Hawks, 114 N.J. 359, 365, 554 A.2d 1330 (1989). In fact, many, if not the vast majority of, drug offenses will involve disorderly-persons offenses or third- or fourth-degree offenses in which a probationary term will be involved. Given that the more serious offender receives a sentence of imprisonment and would not suffer the "separate sting" of license revocation (the offender's license is effectively revoked during the period of imprisonment), to escalate the importance of the license revocation for lesser offenders would be anomalous.
The Comprehensive Drug Reform Act of 1986, N.J.S.A. 2C:35-1 to -23, of which section 16 is a part, reflects a targeted approach to the war on drugs. The Legislature sought "to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders, and to facilitate where feasible the rehabilitation of drug dependent persons so as ultimately to *388 reduce the demand for illegal controlled dangerous substances and the incidence of drug-related crime." N.J.S.A. 2C:35-1.1c. The Legislature found that
[i]n order to be effective, the battle against drug abuse and drug-related crime must be waged aggressively at every level along the drug distribution chain, but in particular, our criminal laws must target for expedited prosecution and enhanced punishment those repeat drug offenders and upper echelon members of organized narcotics trafficking networks who pose the greatest danger to society.
[Ibid.]
Pursuant to that philosophy of a targeted attack, the Task Force on Drugs and the Courts Final Report (Apr. 1991) (Task Force Report) has recommended case-processing tracks consistent with the seriousness of the offense, the offender's prior record, and the nature and extent of drug use. Cases not involving a network leader, profiteer, violent or persistent offender "should be considered for early disposition on receipt of the required assessment-information and identification of available options." Task Force Report, supra, at 24. Early disposition requires a clear understanding of exposures and sanctions. "[O]ur criminal laws and sentencing practices must be reexamined and amended so as to minimize pretrial delay, thereby to ensure the prompt disposition of all drug-related criminal charges and the prompt imposition of fair and certain punishment." N.J.S.A. 2C:35-1.1c.
The interpretation that more closely follows the language of section 16 better achieves the legislative goal of fair and certain punishment. The statute reflects a legislative intent to differentiate dispositions for each of three categories of persons: those who come into court with prior suspensions, those who come into court without prior suspensions, and those who come into court without yet having driving privileges. For those in the first or third categories the Legislature has mandated a delayed period of suspension. For those who fall into the second category, first-time offenders, the Legislature has provided a range of suspension between six and twenty-four months to "commence on the day the sentence is imposed." That range will provide appropriate punishment and adequate deterrence. The aggregate sentence in this *389 case was within that range and may not require revision on remand if the court concludes that a two-year suspension is necessary to punish and deter this first-offender.
The judgment of the Appellate Division is reversed. The matter is remanded to the juvenile court. That court is free to fashion a sentence imposing a period of suspension of up to twenty-four months.
STEIN, J., dissenting.
N.J.S.A. 2C:35-16 ("the statute" or "section 16") imposes on every person convicted of a drug offense the suspension of his or her driving privileges. The question raised in this appeal is whether, when convicted of multiple drug offenses, a defendant may be sentenced to consecutive suspensions of driving privileges or whether the statute forecloses that exercise of judicial discretion. Despite the majority's observation that "[t]he arguments in favor of either outcome are evenly balanced," ante at 383, 634 A.2d at 473, the Court concludes that the imposition of concurrent suspensions will "best advance the efficient trial and disposition of multiple drug offenses." Ibid. I believe that that result conflicts with both the legislative intent and with well-established principles governing consecutive and concurrent sentencing.
The statutory provisions that are the source of debate are those terms describing the commencement of the suspension period and the effect of a prior suspension of driving privileges. Defendant argues that the language of the statute stating that the suspension "shall commence on the day the sentence is imposed" indicates that regardless of the number of drug offenses committed and resulting suspensions imposed, those suspensions must all commence on the day of sentence and therefore must be concurrent. The State argues that preclusion of consecutive suspensions would violate the axiom that a rational system of justice cannot tolerate free crimes. State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985). The State also points out that section 16 applies to "every person" who is convicted of "any offense." According to the State, *390 that language requires a suspension for every violation and does not reflect a legislative intent to allow only concurrent suspensions.
"When a [statute] is subject to more than one interpretation, we look beyond its plain language to determine the Legislature's intent." State v. Bridges, 131 N.J. 402, 407, 621 A.2d 1 (1993). To aid in that determination, we look to the statute as a whole. Loboda v. Township of Clark, 40 N.J. 424, 435, 193 A.2d 97 (1963). The Legislature did not specifically address the disposition of an offender who has been convicted of more than one drug offense and is being sentenced for those convictions during one appearance before the court. However, consideration of the statute's other provisions may guide our inquiry into the legislative intent. State v. Wright, 107 N.J. 488, 497, 527 A.2d 379 (1987). In the 1988 amendment to the statute, the Legislature provided that if a juvenile were sentenced under section 16, the suspension would commence on the juvenile's seventeenth birthday. L. 1988, c. 44, § 7. That amendment also states that a defendant who, at the time of conviction, had already had his or her driving privileges suspended, would be subject to another suspension to commence at the expiration of the former suspension. Ibid. Clearly, the Legislature intended to provide that defendants in either of those situations suffer the full consequences of their offense by receiving license suspensions to commence on a date that ensured such suspensions would have their intended punitive effect. That the Legislature, having determined to impose full license suspensions on juveniles and on defendants with prior suspensions, simultaneously intended to prevent courts from imposing consecutive suspensions on defendants convicted of more than one drug offense is highly improbable. The Code's internal rule of construction that "when the language [of a statute] is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved," N.J.S.A. 2C:1-2c, further supports a construction of the statute that does not punish less severely a defendant convicted of multiple drug offenses simply because the *391 court sentences the defendant for all of the convictions at the same time.
We may also discover the Legislature's intent in enacting N.J.S.A. 2C:35-16 through consideration of the context in which it was adopted and "the entire legislative scheme of which it is part." Wright, supra, 107 N.J. at 497, 527 A.2d 379. Section 16 was enacted as part of the Comprehensive Drug Reform Act of 1986. N.J.S.A. 2C:35-1 to :36A-1 (CDRA). The public policy of the State, as embodied in CDRA, is "to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders." N.J.S.A. 2C:35-1.1c. Toward that end, the Legislature provided for strict penalties including enhanced sentences, see, e.g., N.J.S.A. 2C:35-8, mandatory minimum terms, N.J.S.A. 2C:35-7, monetary penalties, N.J.S.A. 2C:35-15, and forfeiture of driving privileges, N.J.S.A. 2C:35-16. Exceptions to the sentencing scheme of CDRA were sparingly granted. See, e.g., N.J.S.A. 2C:35-12. Where such exceptions were authorized, they were described restrictively and explicitly. See Bridges, supra, 131 N.J. at 409, 621 A.2d 1. The overall objective of the CDRA is swift, certain, and strict punishment. No aspect of the legislative history of CDRA suggests that the Legislature intended the operation of N.J.S.A. 2C:35-16 to be any less severe than the other penalty provisions of the Act.
That sentencing courts ordinarily have discretion to impose consecutive sentences is indisputable, and was well settled when N.J.S.A. 2C:35-16 was enacted. N.J.S.A. 2C:44-5a explicitly empowers courts to impose consecutive sentences. However, that statute does not indicate what criteria determine whether multiple sentences should be concurrent or consecutive. Interpreting that statute in Yarbough, supra, 100 N.J. 627, 498 A.2d 1239, we observed that "in fashioning consecutive or concurrent sentences under the Code, sentencing courts should be guided by the Code's paramount sentencing goals that punishment fit the crime, not the criminal * * *." Id. at 630, 498 A.2d 1239. In an effort to implement that goal, we determined that an offender who has *392 committed multiple offenses may receive consecutive sentences if the crimes and their objectives were independent of each other, if the crimes were committed at different times or places, and if the crimes involved multiple victims. Id. at 644, 498 A.2d 1239. We may assume that the Legislature is cognizant of our decision in Yarbough and of the criteria that inform sentencing decisions. See Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969) (acknowledging that court may presume that Legislature is "thoroughly conversant with its own legislation and the judicial construction of its statutes"). Neither the original language of N.J.S.A. 2C:35-16 nor the 1988 amendment indicates an attempt by the Legislature to alter the sentencing criteria established in Yarbough. This Court should not ascribe to the Legislature an unarticulated intention to change existing law.
Penal statutes generally are to be strictly construed in favor of the accused. State v. Vasquez, 129 N.J. 189, 200, 609 A.2d 29 (1992). However, that construction must be consistent with the intent of the Legislature. In re M.T.S., 129 N.J. 422, 431, 609 A.2d 1266 (1992). Clearly, the intent of the Legislature was not to treat leniently those defendants sentenced on one occasion for multiple convictions of drug offenses. I would adhere to the principles of Yarbough and the general policy of the CDRA, and construe N.J.S.A. 2C:35-16 to allow courts to impose consecutive license suspensions on defendants sentenced for multiple unrelated drug offenses.
Justice CLIFFORD joins in this opinion.
For reversal and remandment  Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN and GARIBALDI  5.
For affirmance  Justices STEIN and CLIFFORD  2.