878 A.2d 746

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ABDUL A. ABDULLAH, A/K/A LOWELL CAMPER,
DEFENDANT–APPELLANT.

Argued March 14, 2005—Decided August 2, 2005.

*Marcia H. Blum* and *Linda Mehling,* Assistant Deputy Public Defenders, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Blum, Ms. Mehling* and *Frank J. Pugliese,* on the briefs).

*Jeanne Screen,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Ms. Screen, Mark Paul Cronin,* Deputy Attorney General and *Carol M. Henderson,* Assistant Attorney General, of counsel and on the briefs).

Justice ALBIN delivered the opinion of the Court.

The Sixth Amendment's jury trial guarantee forbids a judge from imposing a sentence beyond the range authorized by either a jury's verdict or a defendant's admissions at a plea hearing. *United States v. Booker*, —— *U.S.* ——, ——, 125 *S.Ct.* 738, 749, 160 *L.Ed.*2d 621 (2005); *Blakely v. Washington*, 542 *U.S.* 296, ——, 124 *S.Ct.* 2531, 2537, 159 *L.Ed.*2d 403 (2004); *Apprendi v. New Jersey*, 530 *U.S.* 466, 488–90, 120 *S.Ct.* 2348, 2362–63, 147 *L.Ed.*2d 435, 453–55 (2000). To conform the Code of Criminal Justice to that constitutional principle, today, in *State v. Natale*, we struck down the Code's system of presumptive term sentencing. 184 *N.J.* 458, 484, 878 *A.*2d 724, 739 (2005) (*Natale II* ).

Under the Code, the maximum sentence that a judge may impose based on a jury verdict alone is the statutory presumptive term. *Id.* at 484, 878 *A.*2d at 724. Without being bound by the verdict, however, the judge is empowered by the Code to sentence a defendant above the presumptive term based on a finding of one or more aggravating factors listed in *N.J.S.A.* 2C:44–1(a). *Id.* at 484, 878 *A.*2d at 738–39. It is the delegation of that authority to a judge to impose a sentence above the presumptive based on judicial factfinding that runs afoul of the Sixth Amendment. *Id.* at 484, 878 *A.*2d at 739. In *Natale II, supra*, we removed the presumptive terms from *N.J.S.A.* 2C:44–1(f) to bring the Code into compliance with the Sixth Amendment. 184 *N.J.* at 487, 878 *A.*2d at 741.

We now must decide whether other sentencing procedures under the Code intrude on the authority reserved to the jury under the Constitution. In this case, we conclude that the powers given to a judge by the Code to sentence a defendant to a period of life imprisonment for murder, to a period of parole disqualification pursuant to *N.J.S.A.* 2C:43–6(b), and to consecutive sentences for multiple convictions do not run counter to the Sixth Amendment.

I.

A.

Catrina Lark was brutally murdered in her apartment in Atlantic City. Defendant Abdul Aleem Abdullah was charged in an indictment with her murder, *N.J.S.A.* 2C:11–3(a)(1), (2) (count one), and with second-degree burglary, *N.J.S.A.* 2C:18–2 (counts two and three), third-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d) (counts four and five), and fourth-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(d) (counts six and seven). During defendant's trial, a jury learned of the events surrounding Lark's death.

Defendant and Lark were involved in a two-year romantic relationship that ended in December 1998. During that period, defendant spent daytime hours with Lark and his evenings with his girlfriend Joan Robinson, the mother of his two children. Around January 1999, while incarcerated in the Atlantic County jail for a parole violation, defendant learned that Lark was involved in a relationship with his cousin, Robert Boswell, who also was detained in that jail facility. When Lark visited Boswell at the jail two months later, defendant and Boswell became embroiled in an argument during which defendant called Lark a "bitch" and a "whore."

While at the jail, defendant attempted hundreds of collect telephone calls to Lark, including 192 in one day, most of which were refused by either Lark or her mother. On one occasion when Lark's mother answered and told defendant to stop calling, defendant threatened, "If I can't have the bitch, nobody can have her. I'll kill her first." In April 1999, defendant was released from jail.

On May 2, 1999, at approximately 3:30 a.m., Lark made a telephone call to Jessica Ruiz, her neighbor across the street, and told her that defendant was "knocking on her window trying to get in her house." Before hanging up, Lark informed Ruiz that defendant had walked down the street and apparently was gone.

Lark assured Ruiz that she was "all right," and they agreed to talk again later in the morning. During the early morning hours of that same day, Stella Hargrove, who lived in the apartment above Lark's, was awakened by a female voice downstairs, calling out "Aleem ... [d]on't hit me, stop hitting me."

That morning, between 7:00 and 8:00 a.m., Ruiz's boyfriend, Ronald Taylor, went to check on Lark and found her apartment door unlocked. When he called her name and there was no response, Taylor went inside and discovered Lark's body on the kitchen floor. He then returned to Ruiz's apartment and the police were notified.

Upon arriving in Lark's apartment, the police observed blood on the walls and the scene in total disarray. Lark was found lying naked from the waist down in a pool of her own blood on the kitchen floor. She had no pulse and had suffered "multiple lacerations, contusions, and cutting wounds" and "blunt force injuries" over her entire upper body and head. Her skull had been fractured "into many pieces," her left eye ruptured, and a fingertip severed. According to the Atlantic County Medical Examiner, the twenty-two-year-old victim died from "multiple blunt and sharp force injuries of the head, neck, and upper torso areas."

The police retrieved from the area near Lark's body a bloody rolling pin, a broken clothes iron, an electric skillet, a cast-iron frying pan, and a ceramic lamp. The police also recovered a variety of broken, bent, and blood-stained knives scattered throughout the apartment, and a bloody weightlifting glove. The physical evidence pointed to defendant as the killer. Defendant's fingerprints were discovered on the skillet's broken handle. A forensic examination revealed the presence of both defendant's blood and a mixture of his and Lark's blood in the apartment. In addition, Ruiz testified that the bloodstained glove found at the scene was similar to one she had seen defendant wearing.

After surveying the crime scene, the police arrested defendant at his home. At the time of his arrest, defendant was bleeding

from a cut on his hand that he claimed occurred when he fell from his bicycle the previous day. In response to questioning, defendant maintained that he had been home with his girlfriend, Robinson, on the morning of the killing. However, Robinson testified that defendant got up and left their apartment at around 2:40 a.m., and returned sometime between 3:00 and 3:30 a.m., making "a lot of noise when he came in."

When defendant testified, he admitted that he lied to the police about staying home all night and explained that he had gone out to buy and smoke marijuana at about 2:30 or 3:00 a.m. He denied that he called Lark a "bitch" and a "whore" or that he threatened Lark's life in a conversation with her mother. Defendant offered as an alibi witness Victor Winters, who corroborated that he sold marijuana to defendant around 2:30 a.m. on May 2, and smoked with him for approximately thirty minutes.

The jury found defendant guilty of all counts in the indictment. At sentencing, the trial court identified four aggravating factors: "[t]he nature and circumstances of the offense ... including whether or not it was committed in an especially heinous, cruel, or depraved manner," *N.J.S.A.* 2C:44–1(a)(1); "the risk that ... defendant will commit another offense," *N.J.S.A.* 2C:44–1(a)(3); the "extent" and "seriousness" of "defendant's prior criminal record," *N.J.S.A.* 2C:44–1(a)(6); and "[t]he need [to] deter[ ] ... defendant and others from violating the law," *N.J.S.A.* 2C:44–1(a)(9). Finding the aggravating factors to be "overwhelming" and no mitigating factors, the court sentenced defendant to life imprisonment with a thirty-year parole disqualifier on the murder conviction and to a consecutive ten-year prison term with a five-year parole disqualifier on one of the second-degree burglary convictions. The remaining charges were merged into the murder conviction.

The court detailed its reasons for imposing sentence:

This is the most brutal murder the court has seen in over 23 years on the bench. Defendant stabbed and bludgeoned the victim. Six knives were either bent or broken. A cast iron frying pan, an electric frying pan, a wooden rolling pin, an electric iron and a ceramic lamp were also smashed and broken over the victim's

head and body. Defendant has a prior history of domestic violence. He has previously violated parole. This is a vicious dangerous defendant. Society needs to be protected from him. . . . An 18–year prison term imposed on a prior offense did not deter defendant. He violated parole on that offense and committed this murder shortly after being released when he "maxed out." . . . [H]e is the same man who laughed and smirked at the victim's family during trial. His sympathy at sentencing rings hollow.

## B.

On appeal, defendant argued that because the jury did not determine the essential facts necessary for the imposition of maximum terms for murder and second-degree burglary, for the burglary parole disqualifier, and for consecutive sentences, defendant "was denied his Sixth Amendment [jury trial] right" as articulated in *Blakely v. Washington*, 542 *U.S.* 296, 124 *S.Ct.* 2531, 159 *L.Ed.*2d 403 (2004). *State v. Abdullah*, 372 *N.J.Super.* 252, 277, 858 *A.*2d 19 (App.Div.2004).[1]

The appellate panel dismissed defendant's claim that the maximum sentence that could be imposed for burglary based on the jury's verdict was the presumptive term for second-degree offenses, *i.e.*, seven years. *Id.* at 280, 858 *A.*2d 19. Alternatively, even if the maximum sentence for Sixth Amendment purposes was the presumptive term, the panel found that the trial court applied only offender-based aggravating factors *N.J.S.A.* 2C:44–1(a)(3), (6), and (9) to justify the ten-year sentence for second-degree burglary. *Id.* at 281–82, 858 *A.*2d 19. Finding that those aggravating factors emanated from defendant's prior criminal convictions, the panel determined that those factors could be used to increase the penalty above the seven-year presumptive term. *Id.* at 281–82, 858 *A.*2d 19. The panel inferred from the record that the trial court did not rely on aggravating factor (1), *N.J.S.A.* 2C:44–1(a)(1) ("the offense . . . was committed in an especially heinous, cruel, or depraved manner"), to increase defendant's sentence on the burglary conviction above the presumptive, but

---

[1] We need not discuss any of the trial issues raised by defendant because certification was limited to defendant's *Blakely* argument.

applied that factor only to the murder conviction. *Id.* at 281, 858 *A.*2d 19.

Next, the panel concluded that the imposition of a term of life imprisonment for murder did not violate *Blakely, supra. Id.* at 282–83, 858 *A.*2d 19. It noted that the sentencing range for murder is thirty years to life imprisonment and that murder has no presumptive term under *N.J.S.A.* 2C:44–1(f)(1). *Id.* at 282, 858 *A.*2d 19. The panel reasoned that defendant's sentence of life imprisonment fell within the standard range in which judicial factfinding is permissible. *Id.* at 282–83, 858 *A.*2d 19.

Last, the panel held that the Sixth Amendment under *Blakely, supra,* and *Apprendi, supra,* does not require that a jury determine the factors necessary for the imposition of parole ineligibility or consecutive terms. *Id.* at 283, 858 *A.*2d 19. The panel not only upheld the constitutionality of the sentences, but also found that they were "not manifestly excessive or unduly punitive and [did] not constitute an abuse of discretion." *Id.* at 273, 858 *A.*2d 19.

This Court granted defendant's petition for certification limited to the constitutional challenge of his sentence. *State v. Abdullah,* 182 *N.J.* 208, 863 *A.*2d 365 (2004). We now reverse in part and affirm in part.

## II.

### A.

We first consider the constitutionality of defendant's sentence for second-degree burglary. In *Apprendi, supra,* the United States Supreme Court held: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 *U.S.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455. In *Blakely, supra,* the Court refined that formulation by explaining that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury*

*verdict or admitted by the defendant."* 542 *U.S.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403. Thus, "the relevant 'statutory maximum' " is the sentence a judge may impose without making any judicial factfindings. *Id.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403.

■ Under the Code of Criminal Justice, a second-degree crime is punishable by a term of imprisonment between five and ten years, *N.J.S.A.* 2C:43–6(a)(2), with a presumptive term of seven years, *N.J.S.A.* 2C:44–1(f)(1)(c). In *Natale II, supra,* we held that the maximum sentence that can be imposed based on a jury verdict alone is the presumptive term, and therefore "the 'statutory maximum' for *Blakely* and *Booker* purposes is the presumptive term." 184 *N.J.* at 484, 878 *A.*2d at 739. Contrary to the Appellate Division's understanding, a sentence *above the presumptive term* premised on a judge's finding of aggravating factors, other than the fact of a prior criminal conviction, is "incompatible with the holdings in *Apprendi, supra, Blakely, supra,* and *Booker, supra."* *Id.* at 484, 878 *A.*2d at 739.

In this case, the trial court imposed a ten-year sentence for second-degree burglary based on its finding four aggravating factors in *N.J.S.A.* 2C:44–1(a): (1) nature of the offense, (3) risk of recidivism, (6) prior criminal record, and (9) need to deter. Apparently, based on facts not found by the jury, defendant received a sentence three years above the presumptive term for second-degree burglary. We disagree with the Appellate Division's conclusion that the trial court relied exclusively on aggravating factors (3), (6), and (9) to justify a sentence at the top of the range for the burglary conviction.

On the spare record before us, it appears that the sentencing court used the "especially heinous, cruel, or depraved nature of the crime"—a fact not specifically found by the jury—as a basis for increasing the burglary sentence above its presumptive term. Moreover, we cannot tell from the record whether the court used that factfinding to support only aggravating factor (1) or whether

it also was used to support aggravating factors (3) and (9). In other words, the sentencing court may have concluded that the "especially heinous, cruel, or depraved manner" of the killing indicated a risk of recidivism and a need to deter. In light of *Blakely, supra,* and our decision in *Natale II, supra,* only a jury finding of that fact would justify increasing a sentence above the presumptive. *Natale II, supra,* 184 *N.J.* at 484, 878 *A.*2d at 739. Accordingly, we are compelled to remand for resentencing on the burglary conviction.[2]

In *Natale II, supra,* we excised the presumptive terms from the Code so that judges, not juries, still will decide the aggravating factors as the Legislature would have intended, and to bring the Code into conformity with the Sixth Amendment. 184 *N.J.* at 487, 878 *A.*2d at 741. Therefore, on remand, without the presumptive term as the required starting point, the court will consider all applicable aggravating and mitigating factors in determining the appropriate sentence within the range for second-degree burglary. *See id.* at 487–89, 878 *A.*2d at 741. On remand, the court also must articulate with specificity why it selected the applicable sentencing factors and how it weighed those factors in imposing

---

[2] We note that had the trial court specifically found that aggravating factors (3), (6), and (9) related to defendant's prior convictions as the basis for increasing defendant's sentence above the presumptive, we might have come to a different result. "[T]he fact of a prior conviction" may be used to increase the "penalty for a crime beyond the prescribed statutory maximum." *Apprendi, supra,* 530 *U.S.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455; *see also Almendarez–Torres v. United States,* 523 *U.S.* 224, 243, 118 *S.Ct.* 1219, 1230, 140 *L.Ed.*2d 350, 368 (1998) ("[R]ecidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence."). Aggravating factors (3), (6), and (9), *arguably,* are inextricably linked to the recidivism exception. In a discretionary sentencing system in which the court decides the weight to give to a prior criminal conviction and how high on the scale to increase the sentence, the court naturally would consider the risk a defendant will re-offend and the need to deter. We do not know what value a court can give to a criminal conviction in our system without considering those factors.

the appropriate sentence. *N.J.S.A.* 2C:43–2(e); *see also R.* 3:21–4(g); *State v. Kruse,* 105 *N.J.* 354, 363, 521 *A.*2d 836 (1987).

## B.

The trial court sentenced defendant to life imprisonment with a thirty-year parole disqualifier for the murder of Catrina Lark. Defendant acknowledges that the Code does not provide a presumptive term for murder, but argues that the statutory minimum thirty-year term is a *de facto* presumptive sentence. From that premise, defendant concludes that the maximum sentence authorized by the jury verdict alone was a thirty-year parole ineligibility term and that the court's findings of aggravating factors to increase his sentence to life imprisonment violated *Blakely, supra.* We disagree with both defendant's premise and conclusion.

Unlike almost every crime enumerated in the Code, murder has no presumptive term. *N.J.S.A.* 2C:11–3(b)(1). *N.J.S.A.* 2C:11–3(b)(1) provides in relevant part:

> Murder is a crime of the first degree but a person convicted of murder shall be sentenced, except as provided in subsection c. of this section, by the court to a term of 30 years, during which the person shall not be eligible for parole, or be sentenced to a specific term of years *which shall be between 30 years and life imprisonment* of which the person shall serve 30 years before being eligible for parole.
>
> [ (Emphasis added).]

The provision of the Code that implements presumptive term sentencing specifically exempts murder from its sweep: *"Except for the crime of murder,* unless the preponderance of aggravating or mitigating factors ... weighs in favor of a higher or lower term" within the sentencing ranges for the four degrees of crimes, the court "shall impose" the presumptive term. *N.J.S.A.* 2C:44–1(f)(1) (emphasis added). Accordingly, the standard range for murder is a sentence between thirty years and life imprisonment. In contrast with defendant's burglary conviction, in which the upper sentencing limit based on the jury's verdict alone was the presumptive term, defendant's murder conviction did not impose a

*de facto* ceiling below life imprisonment. Therefore, the trial court had discretion to impose a sentence within the statutory range of thirty years to life based on its consideration of the applicable sentencing factors.

This state's sentencing scheme for murder is almost identical to the example of an indeterminate sentencing scheme depicted with approval in *Blakely, supra,* 542 *U.S.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403. In the *Blakely* example, an indeterminate sentencing "system that says the judge may punish burglary with 10 to 40 years," is constitutionally permissible because in such a system "every burglar knows he is risking 40 years in jail." *Id.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403. Under such a system, a judge may "rule on those facts he deems important to the exercise of his sentencing discretion" within the statutory range. *Id.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403.

Likewise, "because the crime of murder has no presumptive term, defendant, like every murderer, knows he is risking life in prison." *Abdullah, supra,* 372 *N.J.Super.* at 283, 858 *A.*2d 19 (internal quotations omitted). We therefore conclude that defendant's sentence of life imprisonment was not in derogation of his Sixth Amendment jury trial right.

### C.

■ We also reject defendant's claim that the trial court abridged his due process and jury trial rights by sentencing him to a five-year period of parole ineligibility on his second-degree burglary conviction "based upon facts neither admitted by defendant nor found by the jury." We find no support in either federal or state case law for defendant's contention.

Based on its finding of four aggravating factors and no mitigating factors, the trial court imposed the maximum parole disqualifier—five years—on the ten-year burglary sentence in accordance with *N.J.S.A* 2C:43–6(b). That statute provides sentencing judges with the authority to impose a period of parole ineligibility on the four graded crimes enumerated in the Code:

As part of a sentence for any crime, *where the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors,* as set forth in subsections a. and b. of [*N.J.S.A.*] 2C:44–1, *the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a.,*[3] or one-half of the term set pursuant to a maximum period of incarceration for a crime set forth in any statute other than this code, during which the defendant shall not be eligible for parole; provided that no defendant shall be eligible for parole at a date earlier than otherwise provided by the law governing parole.
[*N.J.S.A.* 2C:43–6(b) (emphasis added).]

In making the discretionary decision whether to impose a parole disqualifier, "the court balances the same aggravating and mitigating factors used to determine the" length of the sentence, but applies a stricter standard that reflects the serious impact that a parole disqualifier will have on the "real time" a defendant serves on his sentence. *State v. Kruse,* 105 *N.J.* 354, 359, 521 *A.*2d 836 (1987); *see also State v. Stanton,* 176 *N.J.* 75, 90, 820 *A.*2d 637 (2003), *cert. denied,* 540 *U.S.* 903, 124 *S.Ct.* 259, 157 *L.Ed.*2d 187 (2003).

Both the United States Supreme Court and this Court have upheld the constitutionality of statutes that allow judges to impose mandatory-minimum parole ineligibility terms within the sentencing range authorized by the jury verdict. *See, e.g., Harris v. United States,* 536 *U.S.* 545, 568, 122 *S.Ct.* 2406, 2420, 153 *L.Ed.*2d 524, 545 (2002); *McMillan v. Pennsylvania,* 477 *U.S.* 79, 84–86, 106 *S.Ct.* 2411, 2415–16, 91 *L.Ed.*2d 67, 75–76 (1986); *Stanton, supra,* 176 *N.J.* at 96–97, 820 *A.*2d 637.[4] *Apprendi, supra,* and *Blakely, supra,* stand for the proposition that the jury's verdict sets the maximum range of the sentence and that any fact extending the defendant's sentence beyond that range, other than

---

[3] Subsection (a) establishes the sentencing ranges for first-, second-, third-, and fourth-degree crimes. *N.J.S.A.* 2C:43–6(a).

[4] We note that this case does not concern parole disqualifiers imposed under the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2. We previously held in *State v. Johnson* that the constitutional doubt created by *Apprendi, supra,* called for "NERA factors" to be tried to a jury. 166 *N.J.* 523, 540–41, 544, 766 *A.*2d 1126 (2001). Any constitutional doubt regarding the parole disqualifiers in this case was resolved by *Harris, supra.*

that of a prior conviction, must be decided by the jury. *Blakely, supra,* 542 *U.S.* at ——, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d 403; *see also Harris, supra,* 536 *U.S.* at 557, 122 *S.Ct.* at 2414, 153 *L.Ed.*2d at 537–38 (plurality opinion). However, for Sixth Amendment purposes, facts used to extend the sentence beyond the statutory maximum are deemed different from facts used to set the minimum sentence. *Harris, supra,* 536 *U.S.* at 566–67, 122 *S.Ct.* at 2419, 153 *L.Ed.*2d at 544 (plurality opinion). "Within the range authorized by the jury's verdict, . . . the political system may channel judicial discretion—and rely upon judicial expertise—by requiring defendants to serve minimum terms after judges make certain factual findings." *Id.* at 567, 122 *S.Ct.* at 2419, 153 *L.Ed.*2d at 544 (plurality opinion). Accordingly, the imposition of a minimum sentence based on judicial findings "does not evade the requirements of the Fifth and Sixth Amendments." *Id.* at 568, 122 *S.Ct.* at 2420, 153 *L.Ed.*2d at 545.

In *McMillan v. Pennsylvania, supra,* the United States Supreme Court affirmed the constitutionality of a Pennsylvania statute that authorized a judge to sentence a convicted felon to a five-year mandatory-minimum term. 477 *U.S.* at 81, 84–86, 106 *S.Ct.* at 2413, 2415–16, 91 *L.Ed.*2d at 73, 75–76. The statute provided that if the judge found "by a preponderance of the evidence that the" felon " 'visibly possessed a firearm' " when he committed the offense, the parole disqualifier would automatically apply. *Id.* at 81–82, 106 *S.Ct.* at 2413–14, 91 *L.Ed.*2d at 73. In that case, the five-year parole disqualifier fell well within the maximum range permitted by the jury verdict. *Id.* at 82, 106 *S.Ct.* at 2414, 91 *L.Ed.*2d at 73.

In *Harris v. United States, supra,* the Court again upheld the constitutionality of a statute authorizing a judge, based on judicial factfindings, to impose a minimum term of imprisonment within the range sanctioned by the jury verdict. 536 *U.S.* at 568, 122 *S.Ct.* at 2420, 153 *L.Ed.*2d at 545. In that case, a federal statute provided that a person convicted of carrying a firearm during a drug trafficking crime must be sentenced to a mandatory-mini-

mum term of five years. *Id.* at 550–51, 122 *S.Ct.* at 2410–11, 153 *L.Ed.*2d at 533. The statute further required the sentencing judge to increase the mandatory minimum to seven years if he found the gun was "brandished" and to ten years if he found the gun was "discharged." *Id.* at 550–51, 122 *S.Ct.* at 2410–11, 153 *L.Ed.*2d at 533. The trial court "found by a preponderance of the evidence that [the defendant] had brandished the gun." *Id.* at 551, 122 *S.Ct.* at 2411, 153 *L.Ed.*2d at 534. The Supreme Court affirmed the defendant's seven-year mandatory-minimum sentence. *Id.* at 552, 122 *S.Ct.* at 2411, 153 *L.Ed.*2d at 534.

In *State v. Stanton, supra,* this Court upheld the constitutionality of the vehicular homicide statute that required the sentencing judge to impose a mandatory-minimum sentence if he found by a preponderance of the evidence that the defendant drove while under the influence of alcohol or drugs. 176 *N.J.* at 78–79, 96–97, 820 *A.*2d 637. In that case, the defendant was convicted by a jury of second-degree vehicular homicide, contrary to *N.J.S.A.* 2C:11–5. *Id.* at 80, 820 *A.*2d 637. Based on evidence presented at trial that the defendant was driving while under the influence, the sentencing court imposed a three-year parole disqualifier. *Id.* at 80–81, 820 *A.*2d 637. This Court determined that the under-the-influence sentencing factor was not an element of vehicular homicide necessitating a jury determination. *Id.* at 96–97, 820 *A.*2d 637. Relying on *McMillan, supra,* and *Harris, supra,* the Court further held that there was no federal or state constitutional impediment to a judge imposing mandatory-minimum sentences based on judicial factfindings. *Id.* at 91, 95–96, 820 *A.*2d 637.

In this case, defendant challenges *N.J.S.A.* 2C:43–6(b), which invests the sentencing court with the discretion to impose a parole disqualifier "where the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors." Those sentencing factors are the traditional factors that courts always have considered in determining an appropriate sentence. *Natale II, supra,* 184 *N.J.* at 486, 878 *A.*2d at 740. They were neither intended by the Legislature to constitute elements of a crime nor

were they transformed into constitutional elements when the judge used them to justify imposing a parole disqualifier. In light of the outcomes in *McMillan, supra, Harris, supra,* and *Stanton, supra,* and the constitutional principles that undergird them, we hold that *N.J.S.A.* 2C:43–6(b) does not violate the federal or state constitutional rights to due process and trial by jury.

Accordingly, defendant's five-year term of parole ineligibility for second-degree burglary falls squarely within the constitutional boundaries set forth in those cases. However, because of our earlier holding requiring a remand for resentencing on the burglary conviction, the remand court again will consider the appropriate parole disqualifier based on its weighing of the applicable factors. We note that the court must articulate on the record whether it was clearly convinced that the aggravating factors substantially outweighed the mitigating factors. *See N.J.S.A.* 2C:43–2(e); *see also R.* 3:21–4(g).

### D.

██ Last, defendant claims that *Blakely, supra,* requires that the jury, not the judge, make the findings of fact necessary for the imposition of consecutive sentences. On that basis, he challenges the judicially-imposed consecutive sentences that he received for murder and burglary. We find no constitutional impediment to a judge's deciding whether a defendant should serve consecutive sentences under the standards governing sentencing in this state.

*N.J.S.A.* 2C:44–5(a) provides in relevant part that "[w]hen multiple sentences of imprisonment are imposed on a defendant for more than one offense, ... such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." The discretion given to sentencing courts "to impose consecutive sentences" by the Code of Criminal Justice was the continuation of "a long-standing common-law principle." *State in re T.B.,* 134 *N.J.* 382, 385, 634 *A.*2d 473 (1993) (per curiam). The Code, however, does not set forth any standards to guide the court's discretion in deciding whether to impose "consecutive or

concurrent sentences ... when a defendant is convicted of multiple offenses." *State v. Miller*, 108 *N.J.* 112, 121, 527 *A.*2d 1362 (1987). To bring rationality to the process and to further the goal of sentencing uniformity, this Court, in *State v. Yarbough*, developed criteria to be applied by the courts in making those decisions. 100 *N.J.* 627, 630, 643–44, 498 *A.*2d 1239 (1985).

> The *Yarbough* criteria are:
>
> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
>> (a) the crimes and their objectives were predominantly independent of each other;
>>
>> (b) the crimes involved separate acts of violence or threats of violence;
>>
>> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>>
>> (d) any of the crimes involved multiple victims;
>>
>> (e) the convictions for which the sentences are to be imposed are numerous;
>
> (4) there should be no double counting of aggravating factors;
>
> (5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and
>
> (6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.
>
> [*Id.* at 643–44, 498 *A.*2d 1239 (footnote omitted).]

In 1993, the Legislature eliminated the cap on the number of consecutive sentences that could be imposed pursuant to the sixth factor by amending *N.J.S.A.* 2C:44–5(a)(2) to provide that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses." The amendment granted greater discretion to judges in determining the overall length of a sentence.

Under our sentencing scheme, there is no presumption in favor of concurrent sentences and therefore the maximum potential sentence authorized by the jury verdict is the aggregate of

sentences for multiple convictions. *See N.J.S.A.* 2C:44–5(a). In other words, the sentencing range is the maximum sentence for each offense added to every other offense. The *Yarbough* factors serve much the same purpose that aggravating and mitigating factors do in guiding the court toward a sentence within the statutory range. Thus, "every [criminal] knows he is risking" an aggregate sentence covering all the offenses he has committed. *Blakely, supra,* 542 *U.S.* at ——, 124 *S.Ct.* at 2540, 159 *L.Ed.*2d 403. In this case, defendant was on notice that based on the jury's findings, his convictions for murder, second-degree burglary, and the other offenses exposed him to a sentence exceeding life imprisonment.

In that vein, consecutive sentences do not invoke the same concerns that troubled the Supreme Court in *Apprendi, supra, Blakely, supra,* and *Booker, supra.*[5] As in any indeterminate sentencing scheme, the jury verdict in this case allowed the judge to impose a consecutive or concurrent sentence within the maximum range based on the sentencing court's discretionary findings. Unlike a trial court that engages in factfinding as the basis for exceeding the sentence authorized by a jury's verdict, the court here imposed consecutive sentences that were supported by the jury's separate guilty verdicts for each offense. With the exception of merged offenses, defendant knew that he potentially could be sentenced to the sum of the maximum sentences for all of the offenses combined.

We therefore conclude that imposing a consecutive sentence for murder and burglary in this case did not exceed the statutory maximum for *Blakely* or *Apprendi* purposes. However, because

---

[5] We note that courts of other states have affirmed the constitutionality of judicial imposition of consecutive sentences after *Apprendi, supra, Blakely, supra,* and *Booker, supra. See, e.g., Smylie v. State,* 823 *N.E.*2d 679, 686 (Ind.2005) (concluding that imposition of consecutive terms does not run afoul of *Blakely* rule because Indiana "statutes do not erect any target or presumption concerning concurrent or consecutive sentences"); *see also People v. Black,* 35 *Cal.*4th 1238, 29 *Cal.Rptr.*3d 740, 756–57, 113 *P.*3d 534, 550–51 (2005) (upholding California's consecutive sentencing scheme).

the trial court did not explain why it imposed consecutive sentences, we are compelled to remand for the court to place its reasons on the record. *Miller, supra,* 108 *N.J.* at 122, 527 *A.*2d 1362; *see also N.J.S.A.* 2C:43–2(e); *R.* 3:21–4(g). We remind our courts that when imposing either consecutive or concurrent sentences, "[t]he focus should be on the fairness of the overall sentence," and that they should articulate the reasons for their decisions with specific reference to the *Yarbough* factors. *Miller, supra,* 108 *N.J.* at 122, 527 *A.*2d 1362.

### III.

Accordingly, we reverse defendant's ten-year sentence for second-degree burglary and remand to the trial court to determine the sentence anew in accordance with *Natale II, supra,* 184 *N.J.* at 495–96, 878 *A.*2d at 745–46. The court will consider again the imposition of a parole disqualifier. We affirm defendant's sentence of life imprisonment with a thirty-year parole disqualifier on the murder conviction. We also hold that judicially-imposed parole disqualifiers pursuant to *N.J.S.A.* 2C:43–6(b) and judicially-imposed consecutive sentences do not violate the Sixth Amendment. On remand, the court must articulate for the record its reasons for imposing consecutive sentences and any parole disqualifier.

*For affirmance in part/reversal in part/remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.