**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1538-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

A.M.,[1]

    Defendant-Appellant.

_____

> Argued November 14, 2024 – Decided August 11, 2025
>
> Before Judges Rose and DeAlmeida.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 21-05-0268.
>
> Ashley T. Brooks, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Ashley T. Brooks, of counsel and on the briefs).
>
> Monica do Outeiro, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago,

---

[1] We use initials and a pseudonym to protect the identity of the victims of child abuse. R. 1:38-3(c)(9).

Monmouth County Prosecutor, attorney; John J. Santoliquido, of counsel and on the brief).

PER CURIAM

Defendant A.M. appeals his conviction for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), imposed after he pled guilty to causing the death of his six-week-old daughter, G.B. In the alternative, defendant challenges the sentenced imposed. We affirm.

I.

On March 8 or 9, 2019, G.B. died while in defendant's care. At that time, defendant was twenty-one years old.

A Monmouth County grand jury charged defendant with: (1) first-degree murder, N.J.S.A. 2C:11-3(a)(1); (2) an aggravating factor based on the victim's age, N.J.S.A. 2C:11-3(b)(4)(k); and (3) second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2).

On February 10, 2022, pursuant to a negotiated agreement, defendant pled guilty to count one as amended to first-degree aggravated manslaughter. In exchange for his guilty plea, the State agreed to dismiss the remaining charge in the indictment and recommend a thirty-year sentence, with an eighty-five-percent period of parole ineligibility, pursuant to the No Early Release Act

2

(NERA), N.J.S.A. 2C:43-7.2, to run consecutively to a ten-year NERA sentence imposed on a separate indictment.[2]

At the plea hearing, defendant stated as follows: He was caring for G.B. when she awoke in the early morning hours. In an attempt to put G.B. back to sleep, he brought her downstairs to the couch, where he laid down with her. Defendant was aware of the risk he would fall asleep and roll over on her, which could suffocate the child. Defendant later "realized [G.B.] was not okay and rather than render aid . . . put her in" an exercise swing, where she was found dead later that day.

Defendant then answered, "yes" to the question: "And you agree that in the manner in which you slept with her and recklessly causing her to suffocate during the night that you caused her death."

---

[2] The separate indictment charged defendant with: (1) first-degree attempted murder, N.J.S.A. 2C:5-1 and :11-3; (2) three counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2); (3) two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); (4) third-degree witness tampering, N.J.S.A. 2C:28-5(a); and (5) fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1). The conduct giving rise to these charges was discovered during the investigation of G.B.'s death and the victim was defendant's fifteen-month-old son. Defendant pled guilty to two counts of endangering the welfare of a child, one count of aggravated assault, and one count of tampering. He was sentenced on October 29, 2019, and the remaining counts were dismissed on the State's motion.

The State objected to the sufficiency of the plea and stated it was not consistent with the discovery. After counsel conferred off the record, the following exchange took place:

> [Defense Counsel]: [Y]ou had at that time an older child as well. Is that right?
>
> [Defendant]: Yes.
>
> [Defense Counsel]: And there had been occasions . . . when your older child had woken up, you had put your hand over the older child's mouth in an effort to get him to sleep. Is that fair to say?
>
> [Defendant]: Yes.
>
> [Defense Counsel]: And the times that you did that with your son, your son did not die from that. Is that correct?
>
> [Defendant]: That's correct.
>
> [Defense Counsel]: So[,] . . . on or about March 8th to March 9th of June, 2019 (sic) when you were with your infant daughter, you used that same method to try and put your daughter to sleep. Is that correct?
>
> [Defendant]: Yes.
>
> [Defense Counsel]: And you did so because it had not hurt your son, you did not intend on killing your daughter, but you agree that it was reckless that you would put your hand over her nose and mouth in an effort to get her to sleep.
>
> [Defendant]: Yes.

The State then asked follow-up questions:

> [Assistant Prosecutor]: You did . . . review the discovery with your attorney, correct?
>
> [Defendant]: Yes.
>
> [Assistant Prosecutor]: All right. And in that you know that there were recorded phone calls between you and your children's mother, A.B., correct?
>
> [Defendant]: Yes.
>
> [Assistant Prosecutor]: And in those phone calls, you admitted to her that you had, in fact, put your hand over G.B. to prevent her from breathing in an effort to put her to sleep. Is that correct?
>
> [Defendant]: Yes.
>
> [Assistant Prosecutor]: I just didn't hear your answer.
>
> [Defendant]: (No verbal response).
>
> [Assistant Prosecutor]: And just to be clear, G.B. at the time was approximately six weeks old, correct, when she died?
>
> [Defendant]: Yes.
>
> [Assistant Prosecutor]: And your son, at that time, was approximately [fifteen-]months old. Is that correct?
>
> [Defendant]: Yes.

The State expressed its satisfaction with the plea.

5

On December 16, 2022, the court sentenced defendant. The court found aggravating factor one, N.J.S.A. 2C:44-1(a)(1) ("[t]he nature and circumstances of the offense, and the role of the actor in committing the offense, including whether or not it was committed in an especially heinous, cruel, or depraved manner"), two, N.J.S.A. 2C:44-1(a)(2) ("[t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to . . . extreme youth"), three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"), six, N.J.S.A. 2C:44-1(a)(6)("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted"), and nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law").

The court rejected defendant's argument to apply mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"), finding defendant was previously convicted of abusing his son. In addition, the court rejected defendant's argument to apply mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11)

("[t]he imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents"), finding no basis for application of that factor. Finally, the court found mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14) ("[t]he defendant was under [twenty-six] years of age at the time of the commission of the offense"), applied because defendant was twenty-two at the time of the offense.

The court found there was "no question" the aggravating factors substantially outweighed the mitigating factor and sentenced defendant to a thirty-year term of imprisonment, subject to an eighty-five-percent period of parole ineligibility.

With respect to defendant's request the court impose a sentence on these charges concurrently with his sentence for abusing his son, the court found:

> [T]hese were two separate victims, two very, very vulnerable victims, certainly in terms of their ability to defend themselves. Two very, very separate and distinct crimes, but the one we are here for today is the infant daughter, very, very young when her life was tragically taken from her.
>
> So I do find, under these facts, these circumstances, using those guiding principles from [State v. Yarbough, 100 N.J. 627 (1985),] that a consecutive sentence is warranted.

7

A January 19, 2023 judgment of conviction memorialized defendant's conviction and sentence. This appeal followed.[3]

Defendant raises the following arguments.

> POINT I
>
> THE PLEA MUST BE VACATED BECAUSE THE FACTUAL BASIS IS INADEQUATE.
> (Not raised below).
>
> POINT II
>
> A RESENTENCING IS REQUIRED BECAUSE THE SENTENCING COURT WAS REQUIRED TO ORDER A PSYCHOLOGICAL EVALUATION.
> (Not raised below).
>
>> A. A PSYCHOLOGICAL EVALUATION WAS MANDATED BOTH BECAUSE OF THE NATURE OF THE PRESENT AND PRIOR CONVICTIONS AND DUE TO [DEFENDANT'S] MENTAL CONDITION. THE COURT DID NOT WAIVE AND COULD NOT HAVE WAIVED THE EVALUATION BECAUSE IT WOULD HAVE INCLUDED INFORMATION RELEVANT TO SENTENCING.
>>
>> B. A PSYCHOLOGICAL EXAMINATION WAS ALSO REQUIRED, AND COULD NOT BE WAIVED, BECAUSE THE CASE INVOLVES A CHILD ENDANGERING CONVICTION.

---

[3] With the parties' consent, this matter was transferred from the sentencing oral argument calendar to the plenary calendar.

POINT III

IN THE ALTERNATIVE, RESENTENCING IS REQUIRED BECAUSE THE COURT ERRED IN APPLYING THE MITIGATING AND AGGRAVATING FACTORS AND IN IMPOSING A SECOND MAXIMUM CONSECUTIVE SENTENCE.

II.

A.   Adequate Basis for Defendant's Plea.

The necessity of a factual basis to support a guilty plea is rooted in due process.   See McCarthy v. United States, 394 U.S. 459, 466-67 (1969) (explaining defendants' due process rights implicated by the requirement of a factual basis in guilty pleas).   "Simply put, a defendant must acknowledge facts that constitute the essential elements of the crime."   State v. Gregory, 220 N.J. 413, 420 (2015).   "The factual basis for a guilty plea," the Court explained, "can be established by a defendant's explicit admission of guilt or by a defendant's acknowledgment of the underlying facts constituting essential elements of the crime."   Id. at 419.   The factual basis for a plea must come "from the lips" of the defendant.   State v. Tate, 220 N.J. 393, 408 (2015) (quoting State v. Barboza, 115 N.J. 415, 422 (1989) (internal quotations omitted)).   However, "a defendant's admissions 'should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy.'"   State v.

9

Campfield, 213 N.J. 218, 231-32 (2013) (quoting State ex rel. T.M., 166 N.J. 319, 327 (2001)).  Our review of the adequacy of a factual basis for a guilty plea is de novo.  State v. E.J.H., 466 N.J. Super. 32, 37 (App. Div. 2021).

A person is guilty of aggravated manslaughter when he or she "recklessly causes death under circumstances manifesting extreme indifference to human life."  N.J.S.A. 2C:11-4(a)(1).  Second-degree manslaughter, on the other hand, requires the actor recklessly caused the death of another.  N.J.S.A. 2C:11-2(a); N.J.S.A. 2C:11-4(b)(1).  Recklessness is defined as:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct.  The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.
>
> [N.J.S.A. 2C:2-2(b)(3).]

Aggravated manslaughter is distinguished from reckless manslaughter based on "the difference in the degree of the risk that death will result from defendant's conduct."  State v. Curtis, 195 N.J. Super. 354, 364 (App. Div. 1984).  While reckless manslaughter requires only the possibility of causing death, aggravated manslaughter entails a probability that death will occur.  State

v. Bakka, 176 N.J. 533, 550 (2003).  A defendant manifests extreme indifference to human life when his conduct demonstrates that he "does not care whether the victim lives or dies."  Curtis, 195 N.J. Super. at 367.  The State, however, does not need to prove that death is "practically certain" to follow from the defendants' acts.  State v. Gaines, 377 N.J. Super. 612, 621 (App. Div. 2005).  Because the aggravated manslaughter statute provides that a defendant's extreme indifference derives from the circumstances under which he acts, "[t]he relevant circumstances are objective and do not depend on defendant's state of mind."  State v. Sanchez, 224 N.J. Super. 231, 240 (App. Div. 1988).

Defendant argues the factual basis for his plea was insufficient because although he admitted covering G.B.'s mouth was reckless, he did not admit he was aware of or consciously disregarding a risk or probability of her death.  Instead, defendant argues he affirmatively denied awareness of a risk or probability of G.B.'s death because he stated he acted with a belief that rendering his daughter unconscious would not be harmful to G.B., having previously rendered his son unconscious without causing his son's death.

Defendant also argues he did not admit to circumstances establishing he acted with extreme indifference to human life because he believed his acts would

A-1538-22

only put G.B. to sleep. Finally, defendant argues he never admitted causing G.B.'s death by covering her mouth.

We have reviewed the record and are satisfied defendant admitted to acts constituting first-degree aggravated manslaughter. Rendering a six-week-old infant unconscious by suffocation to quiet the child is conduct creating a risk and probability of the infant's death and demonstrating an extreme indifference to human life. While defendant's smothering of his fifteen-month-old son into unconsciousness may not have resulted in that child's death, the physical differences between a fifteen-month-old child and six-week-old infant, and the heightened vulnerability of the infant to death from suffocation, are evident and were disregarded by defendant.

We are not persuaded by defendant's claim he was unaware of the risk and probability of G.B.'s death when he manually obstructed her breathing until she passed into a state of unconsciousness. The nature and purpose of the defendant's conduct and the circumstances known to him establish he disregarded a risk and probability of G.B.'s death in a gross deviation from the standard of conduct a reasonable person would observe in his situation. There is no evidence in the record defendant was unaware of the objective extreme risk

12

posed to a six-week-old by the manual obstruction of her breathing for an extended period of time.

B.    Psychological Evaluation.

We disagree with defendant's argument, raised for the first time on appeal, the court erred by not ordering his psychological evaluation prior to sentencing. Defendant argues an evaluation was required because he had a prior conviction for endangering the welfare of a child and may have had a prior diagnosis of psychosis.

N.J.S.A. 2C:44-6 provides, "[t]he court shall not impose sentence without first ordering a presentence investigation of the defendant and according due consideration to a written report of such investigation when required by the Rules of Court."  The presentence report

> shall also include a medical history of the defendant and a complete psychological evaluation of the defendant in any case in which the defendant is being sentenced for a first[-] or second[-]degree crime involving violence and:
>
> . . . .
>
> (2) the defendant has a prior conviction for . . . endangering the welfare of a child which would constitute a crime of the second degree pursuant to [N.J.S.A.] 2C:24-4 . . . ; or

A-1538-22

(3) the defendant has a prior diagnosis of psychosis.

The court, in its discretion and considering all the appropriate circumstances, may waive the medical history and psychological examination in any case in which a term of imprisonment including a period of parole ineligibility is imposed. In any case involving a conviction of [N.J.S.A.] 2C:24-4, endangering the welfare of a child . . . where the victim of the offense is a child under the age of [eighteen], the investigation shall include a report on the defendant's mental condition.

[N.J.S.A. 2C:44-6(b).]

At the time of sentencing for a first-degree crime involving violence, defendant had a prior conviction for second-degree endangering the welfare of a child, triggering the statutory requirement for a psychological evaluation. However, the statute permits the sentencing court in its discretion to waive a psychological evaluation when, as was the case here, it imposes a term of imprisonment with a period of parole ineligibility.

The judge who presided at defendant's plea hearing also imposed sentence. The judge expressed his familiarity with the record and his review of the presentence report, which included defendant's mental health history. In the absence of a request from defendant's counsel for a psychological evaluation, the court did not expressly state it was waiving the evaluation. However, the

14

record establishes no mistaken exercise of the court's discretion when it sentenced defendant to a term of incarceration including a period of parole ineligibility without a psychological examination.

We are not convinced by defendant's argument his offense "involves a conviction" for endangering the welfare of a child under the age of eighteen pursuant to the final paragraph of the statute. While defendant was indicted for second-degree endangering the welfare of a child, he was convicted of first-degree aggravated manslaughter. In addition, the final paragraph of the statute does not require a psychological evaluation, but a report on defendant's mental condition, which was included in defendant's presentence report.

Finally, defendant offers no evidence he had a prior diagnosis of psychosis. He only suggests he may have had psychosis because he had other mental health issues indicative of someone with psychosis. Because defendant raised this issue for the first time on appeal, the State did not have an opportunity to create a record with respect to whether defendant had a prior diagnosis of psychosis. See State v. Robinson, 200 N.J. 1, 19 (2009) ("The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves."). We see no basis on which to vacate defendant's sentence on these grounds.

A-1538-22

C.    Consecutive Sentences.

We review sentences "in accordance with a deferential standard," State v. Fuentes, 217 N.J. 57, 70 (2014), and are mindful that we "should not 'substitute [our] judgment for those of our sentencing courts,'" State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)).  Thus, we will

> affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

In State v. Yarbough, 100 N.J. 627, 644 (1985), our Supreme Court set forth the following criteria as "general sentencing guidelines" for evaluating the threshold question of whether to impose concurrent or consecutive sentences for multiple offenses pursuant to N.J.S.A. 2C:44-5(a):

> (1)  there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2)  the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3)  some reasons to be considered by the sentencing court should include facts relating to the crimes,

including whether or not:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous.

(4) there should be no double counting of aggravating factors; [and]

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense . . . .

[Id. at 643-44.[4]]

"The Yarbough factors serve much the same purpose that aggravating and mitigating factors do in guiding the court toward a sentence within the statutory

---

[4] In Yarbough, the Court identified a sixth factor, limiting the cumulation of consecutive sentences for multiple offenses. 100 N.J. at 644. That factor was eliminated by the Legislature's amendment of N.J.S.A. 2C:44-5(a), to provide that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses."

range."  State v. Abdullah, 184 N.J. 497, 514 (2005).  "[T]he five 'facts relating to the crimes' contained in Yarbough's third guideline should be applied qualitatively, not quantitatively," and consecutive sentences may be imposed "even though a majority of the Yarbough factors support concurrent sentences." State v. Carey, 168 N.J. 413, 427-28 (2001); see also State v. Molina, 168 N.J. 436, 442-43 (2001) (affirming consecutive sentences although "the only factor that support[ed] consecutive sentences [was] the presence of multiple victims").

In Abdullah, the Court reminded trial judges "that when imposing either consecutive or concurrent sentences, '[t]he focus should be on the fairness of the overall sentence,' and that they should articulate the reasons for their decisions with specific reference to the Yarbough factors."  184 N.J. at 515 (alteration in original) (quoting State v. Miller, 108 N.J. 112, 122 (1987)).  In State v. Torres, 246 N.J. 246 (2021), the Court reiterated that when imposing lengthy consecutive sentences, "an explanation for the overall fairness of a sentence by the sentencing court is required" in order "to 'foster[] consistency in . . . sentencing in that arbitrary or irrational sentencing can be curtailed and, if necessary, corrected through appellate review.'"  Id. at 272 (alterations in original) (quoting State v. Pierce, 188 N.J. 155, 166-67 (2006)).

Having reviewed the record, we find sufficient support for the court's conclusions with respect to the aggravating and mitigating factors. The record also supports the court's imposition of consecutive sentences for defendant's convictions. Defendant's abuse of his son, the details of which were discussed at his sentencing and involved acts of physical abuse, including lifting the child by the neck, throwing him, burning him in scalding water, manual obstruction of his airway until he lost consciousness, and blowing vape smoke into the child's face while he was gasping for air after an attempted suffocation, are separate acts of child abuse from defendant's fatal suffocation of his infant daughter. Consecutive sentences were warranted.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

19

A-1538-22